UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael Lee SPARKS, Defendant–
Appellant.

No. 95–10264.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 11, 1996.

Decided June 21, 1996.

Janet S. Bessemer, Assistant Federal Public Defender, Las Vegas, Nevada, for defendant-appellant.

Ronald C. Rachow, Assistant United States Attorney, Reno, Nevada, for plaintiff-appellee.

Before: BROWNING and JOHN T. NOONAN, Jr., Circuit Judges, MERHIGE, Jr.,* District Judge.

NOONAN, Circuit Judge:

Michael Lee Sparks appeals his conviction of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and of possession of a short-barrel shotgun in violation of 26 U.S.C. §§ 5861(d), 5845(a) and 5871 and his sentencing as an armed career criminal under 18 U.S.C. § 924(e). We affirm the judgments of the convictions but reverse and remand for re-sentencing, holding that the crime of attempted home invasion, as defined by Nevada law, is not a crime that presents a serious potential risk of physical injury to another.

## FACTS

At about 1:15 p.m. on the afternoon of November 8, 1993, Sparks was driving an automobile, with his girlfriend as a passenger, through the city of Reno. A minor traffic accident occurred. According to a bystander, Sparks jumped out of the car, took a shotgun out of the driver's seat and hid it in the back part of the trunk area of the car. The bystander called in his observations, and two police officers came to the scene of the accident. While Officer Wilsey was interrogating Sparks, the helpful bystander pointed Sparks out to Officer David Fogarty as the one who had hid the shotgun. Fogarty then asked Sparks if he had a shotgun, and he said no. Fogarty said someone had seen him get out of the driver's seat with a shotgun, and he again denied that he had one. Fogarty asked him if it would be okay to look in the trunk because that's where the citizen said Sparks had put the shotgun. According to Fogarty, Sparks said that that would be fine, and he pulled out his car keys and started to unlock the hatchback part of the car. Fogarty intervened, as he said for his own safety, and turned the key himself and looked inside. Sparks said, "See, there's nothing there." According to Fogarty, he then asked if he could look inside a little bit further, and Sparks said, "There's nothing there." Fogarty reached in, lifted up a carpeted lid, and saw a sawed-off double-barrel shotgun. Sparks started to walk away. Fogarty grabbed him and handcuffed him, putting him under arrest.

---

* The Honorable Robert R. Merhige, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

*The State Prosecution.* A week later, on November 15, 1993, Sparks was charged in the Nevada state court as an ex-felon in possession of a firearm and in possession of a short-barrel shotgun. Sparks plea bargained with the state. He agreed to plead guilty to having attempted to possess stolen property, namely the shotgun he possessed on the date of the accident. The state agreed to dismiss both firearm charges and not to pursue any other counts arising out of possession of the shotgun. On the same day, August 16, 1994, that Sparks entered this plea agreement he pleaded guilty to a charge of attempted home invasion in violation of Nevada Revised Statute § 205.067. On September 22, 1994, Sparks was sentenced in state court on both convictions. For the crime of attempted home invasion, he received a sentence of four years and for the crime of attempted possession of stolen property, a sentence of one year.

*The Federal Prosecution.* Shortly after Sparks's arrest, an agent of the Alcohol, Tobacco, and Firearms Bureau was advised by the local police of his offense. A detective's report prepared in connection with the state charges stated, "ATF will also be filing on this case." On November 2, 1994, almost a year after his state arrest, the federal government indicted Sparks on one count of being a felon in possession of a firearm and one count of being in possession of a short-barrel shotgun.

Sparks moved to suppress the shotgun. At the suppression hearing, Sparks did not testify in contradiction of Officer Fogarty, but his girlfriend testified that she was in ear range and did not hear Fogarty ask Sparks for his consent. The district court found that there was no conflict between the witnesses because it was not clear that the girlfriend was in a position where she could have heard the conversation. The court found that Sparks had freely consented at a time when he was not under arrest, and, accordingly, the court refused to suppress the shotgun that had been seized.

The case went to trial before a jury. Sparks was convicted. At the sentencing hearing the principal question pursued by the defendant was whether his state conviction of attempted home invasion was conviction of a crime qualifying him as an armed career criminal under 18 U.S.C. § 924(e)(B)(2). The Ninth Circuit case of *United States v. Weekley,* 24 F.3d 1125 (9th Cir.1994), was brought to the attention of the district court and carefully considered by it. The court concluded that *Weekley* dealt with attempting to commit simple burglary, whereas the Nevada statute requires for conviction "the intent to forcibly enter the house." Nev.Rev.Stat. § 205.067 (1995). The court noted that it did not have before it any factual description of what Sparks had done but simply had to look at his plea to the charge of committing the statutory crime. The court found that the statutory crime was "a violent felony," commission of which qualified Sparks as an armed career criminal. Accordingly, the court sentenced Sparks, in the light of his total criminal history, to 26 years, 8 months on the charge of being an ex-felon in possession and to a term of 10 years, to be served concurrently, on the charge of possessing a short barrel shotgun.

Sparks appeals.

## ANALYSIS

 *Suppression Of the Sawed–Off Shotgun.* Sparks concedes that the district court's finding of fact that Sparks freely consented to the search is reviewed for clear error, *United States v. Cannon,* 29 F.3d 472, 477 (9th Cir.1994), but points only to what he claims are "conflicting versions of the conversation." He invokes the teaching that the government cannot prove free consent "by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina,* 391 U.S. 543, 548–49, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). But the district court believed Officer Fogarty, and no reason is given to us for setting aside this determination of credibility and the consequent conclusion that Sparks chose to permit Fogarty to look into the back of his car where the incriminating weapon was.

 *Double Jeopardy.* The district court denied Sparks's motion to dismiss the indictment on double jeopardy. We review the district court's refusal to dismiss the

indictment de novo. *United States v. Chick,* 61 F.3d 682, 686 (9th Cir.1995). Sparks argues that he was exposed to double jeopardy by the federal prosecution following the state dismissal of similar charges for possession of a short-barrel shotgun and possession of it as an ex-felon. This objection to the federal prosecution is a nonstarter. Jeopardy never attached in the state court because Sparks was never put to trial on the two counts which the state dismissed. The constitutional prohibition has no application. *United States v. Vaughan,* 715 F.2d 1373, 1376 (9th Cir.1983).

■ *Federal Violation of the State's Agreement.* In a second argument, which is raised for the first time on appeal, Sparks claims that the federal government should have been bound by the state's agreement not to prosecute on the gun charges. This recasting of the double jeopardy argument also fails because the state can't bind the federal authorities. *United States v. Cordova–Perez,* 65 F.3d 1552, 1554 (9th Cir.1995).

■ *Prejudicial Delay in Sparks's Indictment.* Still seeking to make something of the correlation between the state and federal prosecutions, Sparks raises a second argument he did not address to the trial court: that due process was denied him when the federal government waited nearly a year to indict him and did so, he contends, deliberately so that he would have on his record a state conviction that would doom him as an armed career criminal.

■ This argument comes up belatedly and is reviewable as such only under the plain error standard. *United States v. Dischner,* 974 F.2d 1502, 1515 (9th Cir.1992), *cert. denied,* 507 U.S. 923, 113 S.Ct. 1290, 122 L.Ed.2d 682 (1993). It is true that federal-state cooperation in the prosecution and conviction of criminals, while desirable, may cause uneasiness if it is so structured that it appears that one government is unfairly piling on a sentence for crimes the other government has already punished or used as a tool to get a plea. See, in particular, *United States v. All Assets of G.P.S. Automotive Corp.,* 66 F.3d 483, 498–99 (2d Cir.1995), where Judge Calabresi observes that the

great multiplication of federal statutes and prosecutions in areas formerly reserved to the states gives rise to risks of governmental tyranny that the older, simpler cases did not contemplate. Nonetheless, as we have recently remarked, it is extraordinarily difficult to show prejudice arising from a delay in indictment that falls within the applicable statute of limitations. *United States v. Martinez,* 77 F.3d 332, 335–337 (9th Cir.1996). That Sparks should have been found guilty of criminal conduct for which the state could exact a penalty was not the doing of the federal prosecution; and for the federal prosecutors to wait until he got his state sentence was not federal action prejudicial to him; his criminal history was the result of what he had done.

■ *The Armed Career Criminal Conviction.* The district court made a conscientious effort to apply *Weekley,* 24 F.3d 1125 (9th Cir.1994), but did not meet the standard there established. That case, like the statutory language it interpreted, requires for a crime to qualify as a predicate for armed career criminal status that the statutory elements of the crime include "a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). There is nothing in the Nevada crime of attempted home invasion that meets this exacting standard.

The Nevada statute provides: "Any person who, by day or night, forcibly enters an inhabited dwelling without permission of the owner, resident or lawful occupant, whether or not a person is present at the time of the entry, is guilty of invasion of the home." Nev.Rev.Stat. § 205.067 (1995). "Forcibly enters" means the entry of an inhabited dwelling involving any act of physical force resulting in damage to the structure. *Id.* Nevada Revised Statute § 193.330 defines attempt as "an act done with intent to commit a crime, intending but failing to accomplish it."

The Nevada Supreme Court has discussed the attempt statute and stated: "To prove an attempt to commit a crime, the prosecution must establish (1) the intent to commit the crime; (2) performance of some act towards its commission; and (3) failure to consummate its commission." *Moffett v. State,* 96

Nev. 822, 824, 618 P.2d 1223, 1224 (1980). In *Van Bell v. State,* 105 Nev. 352, 354, 775 P.2d 1273, 1275 (1989), the Nevada Supreme Court stated that mere preparation to commit a crime is insufficient to constitute an attempt. The Nevada Supreme Court went on in *Van Bell* to state, citing *People v. Dillon,* 34 Cal.3d 441, 194 Cal.Rptr. 390, 668 P.2d 697 (1983):

> [T]he plainer the intent to commit the offense the more likely that steps taken in the early stages of the commission of [the] crime will satisfy the overt act requirement.

*Van Bell,* 105 Nev. at 355, 775 P.2d at 1275. *See also Larsen v. State,* 86 Nev. 451, 454, 470 P.2d 417, 419 (1970) (holding that when a defendant's intent to commit the crime is clearly shown, slight acts done in furtherance of that crime constitute the attempt).

■ The government argues that conviction under this statute "establishes that the defendant had the specific intent to commit a crime that created a risk of physical injury to another." It is the "inherent potential for harm to persons" that is the operative characteristic of the crimes selected by Congress. *Taylor v. United States,* 495 U.S. 575, 588, 110 S.Ct. 2143, 2152, 109 L.Ed.2d 607 (1990). But the government confuses the risk of physical injury to property with physical injury to a person. The statute itself makes plain that the crime is committed "whether or not a person is present at the time of the entry." Nev.Rev.Stat. § 205.067. The crime could perfectly well be committed without physical injury to a human being. There is "a risk of a risk" of injury to a human person, but that "is not enough of a risk." *Weekley,* 24 F.3d at 1125. Accordingly, Sparks's sentence as an armed career criminal cannot stand.

**AFFIRMED** as to conviction. **REMANDED** as to resentencing.