UNITED STATES of America,
Plaintiff–Appellee,

v.

Brett Wayne WOFFORD,
Defendant–Appellant.

No. 96–10008.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 11, 1997.

Decided May 7, 1997.

As Amended Aug. 21, 1997.

Kathy M. Chavez, Berkeley, CA, for defendant-appellant.

William P. Keane, Assistant United States Attorney, San Jose, CA, for plaintiff-appellee.

Before: SCHROEDER, ALARCON, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge.

We must decide whether the judge in a felon-in-possession trial properly barred the

defendant from presenting a justification defense to the jury and whether a California conviction for grand theft from a person is a violent felony for mandatory minimum sentencing purposes.

## I

Wofford was convicted in 1976 for robbery, in 1979 for grand theft from a person, and in 1982 for assault. As a felon, he was prohibited from possessing a firearm or ammunition. Nonetheless, when Wofford was arrested at his mother's house where he was living in 1995, a police search uncovered a .357 magnum caliber six-shot revolver and a box of ammunition. The weapon and ammunition were in a grocery bag wrapped with tape, which was found in the attic crawl-space accessed by a ladder from the garage. Wofford was thereafter indicted and tried on one count of felon-in-possession of a firearm and one count of felon-in-possession of ammunition, both in violation of 18 U.S.C. § 922(g)(1).

Evidence at trial showed that Wofford purchased the revolver in early 1991. He claimed that he initially kept the gun under his mattress, and later gave it to his girlfriend's next door neighbor. While in jail in July 1991 on an unrelated matter, Wofford had his mother retrieve the gun from the neighbor and store it in a bedroom closet in her house where he returned to live after his release from jail in mid–1992. The government presented evidence establishing that Wofford had placed the weapon and ammunition in the bag, sealed it, and hid it in his mother's attic.

Wofford took the stand and offered a justification defense, testifying that after his arrest for murder of members of the "Hell's Angels" gang in 1985, he had received continuing threats on his life. After interrupting his testimony and conducting a hearing, the district court ruled that Wofford could not satisfy the elements of a justification defense as a matter of law.

Wofford also contended that the mandatory minimum sentence of 15 years imprisonment under 18 U.S.C. § 924 did not apply to

him because his prior conviction for grand theft from a person was not a "violent felony." Before trial, he moved to strike the enhancement allegations in the indictment. The district court denied his motion, ruling that "taking property directly from another is 'conduct that presents a serious potential risk of physical injury to another,' since it is likely that a struggle will ensue resulting in physical injury to the victim."

The jury convicted Wofford of both counts of felon-in-possession, and the district court sentenced him to the mandatory minimum of fifteen years imprisonment. He filed this timely appeal from both his convictions and his sentence.

## II

During a break in Wofford's testimony supporting his justification defense, the district court entertained argument on whether Wofford could, as a matter of law, satisfy the requirements for the defense. After allowing Wofford to make an offer of proof, the district court ruled that the justification defense was not available. It thereafter instructed the jury to disregard Wofford's testimony on justification.

▮ Wofford argues that the district court improperly took the justification defense away from the jury. He is correct to the extent that a criminal defendant has the right to have a jury resolve disputed factual issues. *United States v. Dorrell,* 758 F.2d 427, 430 (9th Cir.1985). Wofford is entitled to "instructions relating to a theory of defense for which there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Lemon,* 824 F.2d 763, 764 (9th Cir.1987). "A 'mere scintilla' of evidence supporting a defendant's theory, however, is not sufficient to warrant a defense instruction." *United States v. Morton,* 999 F.2d 435, 437 (9th Cir.1993).

▮ There are four elements to a justification defense [1] to a charge of felon in possession of a firearm:

1. Wofford styles his defense as a "necessity or justification" defense, as does the government.

[The defendant] must demonstrate that: (1) he was under unlawful and present threat of death or serious bodily injury; (2) he did not recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) he had no reasonable legal alternative; and (4) there was a direct causal relationship between the criminal action and the avoidance of the threatened harm.

*Lemon,* 824 F.2d at 765; *see United States v. Gomez,* 92 F.3d 770, 775 (9th Cir.1996).

The government does not seriously dispute the second element. We must decide, however, whether Wofford could satisfy the other three elements of the defense.

### A

■ Was Wofford "under unlawful or present threat of death or serious bodily injury"? Wofford claims that he received threats beginning when he was charged in 1985 with the death of three "Hell's Angels" gang members. At trial, he testified that he had received numerous written and verbal threats, had been assaulted several times, had dodged gunfire twice, and that his wife had received a rape threat. These incidents occurred between 1985 and January 1991. In his offer of proof to the court, Wofford later stated that he continued to receive threats throughout 1991 and 1992, and had received threats while in custody awaiting trial, although he provided no details regarding threats received after January 1991. Wofford was charged with possession of a firearm between July 26, 1991 and October 26, 1992. Wofford contends that, if viewed in the light most favorable to him, he adduced sufficient evidence to satisfy the requirement that he be under "present threat of death or serious bodily injury." We disagree.

The most recent specific threat Wofford identified occurred in January 1991–five months before the charged conduct began. We have previously held that a "present threat" must be much more recent than that. *See United States v. Sahakian,* 965 F.2d 740, 741 (9th Cir.1992) (holding that threat occurring 36 days before possession of firearm not "present threat"); *Lemon,* 824 F.2d at 765 (ruling that "present threat" ceased when Lemon's assailant left scene).

Wofford's vague testimony during his offer of proof that the threats were "continuing" does not change our conclusion. He was unable to provide any details whatsoever about threats received after January 1991.[2] The bald assertion that he was threatened throughout the relevant period is not enough to entitle Wofford to a jury instruction. Indeed, unless a defendant presents evidence of a specific threat or a specific instance when he was threatened, it is impossible for the court to determine whether the four elements to the justification defense have been met. In such circumstances, the justification defense is unavailable as a matter of law.

Wofford places great reliance on two cases: *United States v. Gomez,* 92 F.3d 770 (9th Cir.1996), and *United States v. Contento-Pachon,* 723 F.2d 691 (9th Cir.1984). Both of those cases involved exceptional circumstances, and both defendants had presented specific evidence of very recent threats that had not yet abated.

In *Gomez,* the defendant was a confidential informant in the prosecution of one Mir. Mir had solicited the murder of several witnesses to a different criminal case. The government mistakenly released Gomez's name to Mir, and Mir had proceeded to threaten Gomez and had even taken out a contract on Gomez's life. Gomez turned for help to federal

---

This circuit has noted that the type of defense Wofford offers, though often called a necessity defense, is in fact the defense of justification (and, indeed, necessity was traditionally considered a branch of the justification defense). *See United States v. Gomez,* 92 F.3d 770, 774 n. 6 (9th Cir.1996).

**2.** The only testimony about threats received after January 1991 consisted of the following exchange during the offer of proof:

Q: Have the threats ever stopped?
A: No.
Q: Have they been continuing?
A: Yes.
Q: Have you received any threats while you were in custody?
A: Yes.

agents, local law enforcement, his parole agent, and two churches, all to no avail. He then attempted to hide by living with a series of friends and family members. After receiving another death threat, he eventually took possession of a friend's firearm and was arrested two days later. The court held that, although two days had elapsed between the latest threat and Gomez's possession, Gomez was nonetheless under a "present threat" because the clear, highly specific, and credible danger to him had not ceased. *Id.* at 776.

As Chief Judge Posner observed in *United States v. Perez,* 86 F.3d 735 (7th Cir.1996), *Gomez* is limited to extraordinary cases.

> The defense of necessity will rarely lie in a felon-in-possession case unless the ex-felon, not being engaged in criminal activity, does nothing more than grab a gun with which he or another is being threatened.... [O]nly in the most extraordinary circumstances, illustrated by *United States v. Gomez,* where the defendant had sought protection from the authorities without success, will the defense entitle the ex-felon to arm himself in advance of the crisis merely because he fears, however sincerely and reasonably, that he is in serious danger of deadly harm.

*Id.* at 737 (citation omitted).

Likewise, *Contento–Pachon,* 723 F.2d at 691, a duress case, is distinguishable. Contento–Pachon was a Colombian citizen who swallowed balloons filled with cocaine and then flew to the United States. He testified that he and his family had been threatened by a Colombian drug trafficker named Jorge, who forced Contento–Pachon to swallow the balloons and transport them to America. Jorge told Contento–Pachon that he would be watched at all times during the trip; if he failed to follow Jorge's instructions, Jorge would kill his family. Contento–Pachon did not go to the police since he believed the Colombian police were corrupt. When he was stopped by U.S. customs agents and taken out of public view, however, Contento–Pachon cooperated fully. *Id.* at 693. We held that the threat to Contento–Pachon was immediate because it was still continuing-if his testimony was believed, Contento–Pachon was under constant surveillance by Jorge while he committed the illegal acts. *Id.* at 693–94.

In contrast, in this case there was no evidence of the exceptional circumstances present in *Gomez* and *Contento–Pachon.* The last specific threat against Wofford ·was at least five months old, and nothing indicated it was continuing and "present". In short, Wofford's vague testimony about continuing threats do not make this a "most extraordinary" case.

## B

■ Did Wofford have "no reasonable legal alternative"? As this court stated in *Lemon,* "[t]o establish that he had no alternative to possessing a firearm, [a defendant] 'must show that he actually tried the alternative or had no time to try it, or that a history of futile attempts revealed the illusionary benefits of the alternatives.'" *Lemon,* 824 F.2d at 765. Our cases uniformly require the defendant to seek aid from law enforcement before taking matters into his own hands. *See Perez,* 86 F.3d at 737; *Gomez,* 92 F.3d at 777; *Lemon,* 824 F.2d at 765. The exception is *Contento–Pachon,* a duress case not involving felon-in-possession charges. Moreover, in that case the defendant believed the police in Colombia were corrupt, and he assisted U.S. law enforcement officers at his first opportunity to do so out of the public view. *Contento–Pachon,* 723 F.2d at 692–93; *see United States v. Moreno,* 102 F.3d 994, 997–998 (9th Cir.1996) (distinguishing *Contento–Pachon*).

Wofford admits that he did not approach the police or any other representative of law enforcement. Instead, he asseverates that he feared being branded a "snitch," and took other measures to avoid the threat-changing his phone number, putting his house up for sale, and talking to "people in the streets" and the man he believed responsible for the threat on his wife. These bland palliatives do not cure the defect in Wofford's offer of proof. He did not seek protection from law enforcement first, even though it was neither futile nor impossible for him to do so. He therefore cannot satisfy the third element of the justification defense.

## C

■ Was there "a direct causal relationship between the criminal action and the avoidance of the threatened harm"? Wofford concedes that, at various times, he kept the gun under his mattress, at a neighbor's house, in a closet, and wrapped in a bag and stored in the attic crawl-space above his mother's garage. Nonetheless, he claims that he possessed the weapon with the singular purpose of protecting his wife and himself from the threatened attempts on his life. This provides a "sufficient nexus" for the causal relationship element, he contends. We are not persuaded.

The circumstances surrounding Wofford's possession of the firearm suggest that there was little causal connection to the threats. When found by police, the gun was in a sealed grocery bag and placed in his mother's attic. Had an attempt been made on Wofford's life, the gun could not have abated the threat against him. Moreover, since Wofford did not provide evidence of any recent, specific threats, it is impossible to determine whether there is a causal connection between those alleged threats and his possession of the weapon.

Because Wofford failed to establish a factual basis for three of the four required elements of a justification defense, the district court did not err when it instructed the jury to disregard Wofford's testimony regarding the defense.

## III

■ Under 18 U.S.C. § 924(e), a person with three prior "violent felony" convictions is subject to a fifteen-year mandatory minimum sentence for violating 18 U.S.C. § 922(g), which prohibits convicted felons from possessing firearms or ammunition. Wofford has three prior felony convictions: one for robbery in 1976, one for assault in 1982, and one for grand theft from a person in 1979. He concedes that robbery and assault are "violent felonies" under § 924(e), but argues that grand theft from a person is not.

Section 924(e) defines "violent felony" as any crime punishable by imprisonment for a term exceeding one year . . . that—

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

■ In applying § 924(e), this court must take a "categorical approach." That is, the court should "look[ ] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor v. United States*, 495 U.S. 575, 600, 110 S.Ct. 2143, 2159, 109 L.Ed.2d 607 (1990); *United States v. Sherbondy*, 865 F.2d 996, 1008 (9th Cir.1988). To discourage extensive fact-finding regarding past criminal activity, sentencing courts may only consider "the statutory definition of the crime, any conduct charged in the indictment or information, the defendant's guilty plea or plea agreement, and any jury instructions." *United States v. Wood*, 52 F.3d 272, 275 (9th Cir.1995); *United States v. Weekley*, 24 F.3d 1125, 1126–27 (9th Cir.1994). As we stated in *United States v. Potter*, 895 F.2d 1231 (9th Cir.), *cert. denied*, 497 U.S. 1008, 110 S.Ct. 3247, 111 L.Ed.2d 757 (1990): "If the defendant could have been convicted of the prior crime without using or threatening force against or risking serious injury to another person, then the prior conviction does not constitute a 'violent felony' and cannot be used to enhance his sentence." *Id.* at 1237.

The California Penal Code defines grand theft from a person as "theft committed . . . when the property is taken from the person of another." Cal.Penal Code § 487(2). Since *People v. McElroy*, 116 Cal. 583, 48 P. 718 (1897), California courts have interpreted this statute to require that "the property shall at the time be in some way actually upon or attached to the person, or carried or held in actual physical possession. . . ." *People v. Williams*, 9 Cal.App.4th 1465, 1471, 12 Cal.Rptr.2d 243 (1992) (quoting *In re George B.*, 228 Cal.App.3d 1088, 1091–92, 279 Cal. Rptr. 388 (1991)).

The question is thus whether a conviction of grand theft from a person, which requires the taking of property attached to or carried by a person, is a "violent felony" under § 924(e). The government concedes that the use or threat of physical force is not an element of grand theft from a person. Instead, the government argues that it "involves conduct that presents a serious potential risk of physical injury to another."

We have not previously ruled on this specific question.[3] To do so, we must first review how the "otherwise" clause of § 924(e)(2)(B)(ii) relates to the other clauses in that subsection. As we explained in *Sherbondy*, subsection (i) covers crimes where physical force must always be proved to obtain a conviction. *Sherbondy*, 865 F.2d at 1009. Subsection (ii) covers four specific types of serious property crimes "which Congress believed involves conduct which poses a particularly serious 'risk of injury to another,' although violence is not an element of the offense." And the "otherwise" clause covers crimes that "otherwise" generically involve the same sort of risk as those four enumerated crimes. *Id.* Our task, therefore, is to assess whether grand theft from a person, viewed categorically, involves the same sort of risk as crimes like generic burglary, arson, or extortion.

In *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court analyzed § 924(e) and concluded that when Congress referred to burglary, it meant "generic" burglary. That is, any crime with at least the elements of unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime, is a "violent felony." *Id.* at 598, 110 S.Ct. at 2158. A burglary of an unoccupied building, while unarmed, and without threatening physical injury to another person, still qualifies as a violent felony. "Congress thought ordinary burglaries, as well as burglaries involving some element making them especially dangerous, presented a sufficiently 'serious potential risk' to count toward enhancement." *Id.* at 597, 110 S.Ct. at 2158.

Similarly, *Sherbondy* noted that both involuntary manslaughter and kidnapping would be covered by the "otherwise" clause. Even though kidnapping could be accomplished by trickery or deceit, it reasoned, it would entail a serious potential risk of physical injury to the victim. *Sherbondy*, 865 F.2d at 1009.

By definition, every conviction for grand theft from a person involves direct physical contact between the perpetrator and the victim; the property must be actually attached to or carried by the victim when it is taken by the thief. The thief must not only come near his victim to commit his crime; he must reach out and touch that victim. When he confronts the victim and seizes property from the victim's person, the criminal creates a serious risk of physical injury to another; the victim might resist, or a bystander intervene, and a struggle ensue. Even though the thief might sometimes, by stealth, avoid immediate detection by his victim, he risks such a confrontation at every encounter. Viewed *ex ante*, the thief's conduct presents a serious potential risk of physical injury to another.

3. The Ninth Circuit has held a number of offenses to be violent felonies. *See United States v. Wood*, 52 F.3d 272 (9th Cir.1995) (indecent liberties) (using § 924(e) analysis in applying U.S.S.G. § 4B1.2); *United States v. Kilgore*, 7 F.3d 854 (9th Cir.1993) (intentional assault to avoid arrest); *United States v. Canon*, 993 F.2d 1439 (9th Cir.1993) (possession of "sap" (an "inherently dangerous and deadly weapon similar to a blackjack")); *United States v. Lonczak*, 993 F.2d 180 (9th Cir.1993) (child-stealing); *United States v. Mendez*, 992 F.2d 1488 (9th Cir.1993), cert. denied, 510 U.S. 896, 114 S.Ct. 262, 126 L.Ed.2d 214 (1993) (conspiracy to rob); *United States v. Huffhines*, 967 F.2d 314 (9th Cir.1992) (possession of a silencer); *United States v. Potter*,

895 F.2d 1231 (9th Cir.), *cert. denied*, 497 U.S. 1008, 110 S.Ct. 3247, 111 L.Ed.2d 757 (1990) (rape by force or fear of injury).

In contrast, a number of other offenses have been ruled to be outside of the definition of a violent felony. *See United States v. Sparks*, 87 F.3d 276 (9th Cir.1996) (attempted home invasion); *United States v. Weekley*, 24 F.3d 1125 (9th Cir.1994) ("substantial step" attempted burglary); *United States v. Garcia–Cruz*, 978 F.2d 537 (9th Cir.1992), *cert. denied*, 508 U.S. 955, 113 S.Ct. 2453, 124 L.Ed.2d 669 (1993) (felon in possession of concealable firearm); *United States v. Sherbondy*, 865 F.2d 996 (9th Cir.1988) (California witness intimidation statute).

To be sure, every grand theft from a person does not result in a struggle or in physical injury. It is possible that if physical injury did result, the perpetrator might be charged with a different crime having as an element the use of physical force. This is of no moment, however, since the conduct need not always result in physical injury. The statute does not direct our attention to the actual results of the conduct viewed *ex post,* but to the risks posed by the conduct viewed *ex ante.* Just as the generic burglary of an empty, unoccupied building, *Taylor,* 495 U.S. at 597, 110 S.Ct. at 2157–58, and kidnapping by trickery, *Sherbondy,* 865 F.2d at 1009, present a serious risk of physical injury, so does grand theft from a person.[4]

### IV

Because we hold that the justification defense was not available to Wofford as a matter of law, and that California's crime of grand theft from a person is a violent felony under § 924(e), we affirm both Wofford's convictions and his sentence.

AFFIRMED.

---

4. We note that the First and Fourth Circuits reached the same conclusion when they considered similar criminal statutes. *See United States v. Mobley,* 40 F.3d 688 (4th Cir.1994), *cert. denied,* 514 U.S. 1129, 115 S.Ct. 2005, 131 L.Ed.2d 1005 (1995); *United States v. De Jesus,* 984 F.2d 21 (1st Cir.1993). We find these precedents persuasive.

Wofford attempts to distinguish *Mobley,* claiming that the Fourth Circuit did not properly follow the categorical approach because it based its decision on conduct that *might* occur, not that *would* occur, in connection with the commission of the offense. As we have already explained, the problem with Wofford's argument is that a "serious risk of potential physical injury" is all that is required. True, that risk must be present for all potential convictions under the statute, but every pickpocketing episode need not result in a confrontation. As long as the risk of physical injury is present for all convictions, the offense is a "violent felony" under § 924(e).