**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 27, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DANNY DUTTON,

Defendant-Appellant.

No. 09-4008
(D.C. No. 2:07-CR-00371-TC-1)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, Chief Judge, **MURPHY**, and **O'BRIEN**, Circuit Judges.

---

Claiming that threats against his life excused his possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), Danny Dutton appeals the district court's refusal to instruct the jury on justification. Because we hold that he was not under an immediate threat of harm, we affirm his conviction.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. BACKGROUND

Trouble began for Mr. Dutton when he loaned $500 to Lucinda Corral, expecting a full repayment plus an additional $100 the following week. After Mr. Dutton attempted to collect, Ms. Corral made clear she had no intention of repaying him. Mr. Dutton subsequently faced repeated threats to his life. On March 24, 2007, Ms. Corral went to Mr. Dutton's home in Hurricane, Utah, accompanied by two men, Juan Gonzales and Aaron Barbosa. There, Mr. Barbosa attacked Mr. Dutton with a metal pipe, breaking his arm in two places and inflicting other wounds, while Mr. Gonzales and Ms. Corral waited outside. Mr. Dutton fought off the attack long enough to obtain a gun from his kitchen and shoot Mr. Barbosa to death. Officials later determined that Mr. Dutton had acted in self-defense, though they initially pressed state felon-in-possession charges.

Officials and Mr. Dutton assumed that his assailants had gang connections, and feared retaliation. Officials told Mr. Dutton and his family to remain vigilant and take measures to protect themselves. Officials also reminded Mr. Dutton that he was not allowed to possess a firearm because he was previously convicted of a felony; they informed him of this on March 24, and again the following day. Mr. Dutton did not return to his apartment, but went into hiding at his parents' home. With the assistance of the Hurricane Police Department, he put his things in a storage unit while under police escort, changed his appearance, and relocated his dog. The Hurricane Chief of Police gave the Dutton family his cell phone

number, and received several calls from them. Officers also responded to a call from Mr. Dutton's mother reporting a truck driven by a dark-headed male that was driving up and down her street, but the officers discovered nothing amiss.

Mr. Dutton's estranged wife, who lived with their son 64 miles away in Lamb, Utah, received three disturbing phone calls between March 25, 2007, and April 20, 2007. The caller asked Mr. Dutton's location and stated that he knew who Ms. Dutton was, that she lived with her son, and that he would be watching her. The caller told Ms. Dutton to relay these messages to Mr. Dutton, which she did. After the third call, Ms. Dutton shut off her cell phone and went into hiding with her son.

Approximately three weeks after the attack on Mr. Dutton, the Hurricane Police Department determined that Mr. Dutton's assailants were not affiliated with any gang, that they did not pose as great a threat of retaliation as initially believed, and that the Dutton family in Hurricane had never received any credible retaliatory threats. Mr. Dutton remained concerned and, worried that he could not rely on law enforcement, took additional precautions, including disconnecting his telephone, hiding his vehicle, and sleeping only when another adult male was present.

Approximately six weeks after the shooting, on May 7, 2007, Mr. Dutton visited the residence of his friend Ricky Jenson to collect some tools. Coincidentally, local probation officers were simultaneously executing a search

warrant at Mr. Jenson's house. After Mr. Dutton hesitated to remove his hand from his pocket in response to one of the officer's commands, officers searched Mr. Dutton and found a loaded revolver in his front right pocket.

Mr. Dutton was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Prior to trial, Mr. Dutton filed a motion to allow a jury instruction for justification. A magistrate judge held an evidentiary hearing on the issue and recommended that Mr. Dutton's motion be denied. The district court adopted the magistrate judge's report and recommendation and denied the motion for a jury instruction of justification. The district court then denied Mr. Dutton's motion for reconsideration. Mr. Dutton was found guilty in a two-day jury trial, and was sentenced to 37 months' imprisonment with credit for time served. Mr. Dutton now appeals the district court's determination not to instruct the jury on justification.

## II.  DISCUSSION

### A. Standard of Review

We review a district court's refusal to give requested jury instructions for abuse of discretion. *United States v. Crockett*, 435 F.3d 1305, 1314 (10th Cir. 2006). A district court must give a requested instruction on a defendant's theory of the case "if the instruction is a correct statement of the law," and the defendant "has offered sufficient evidence for the jury to find in his favor." *Id.* "For the purposes of determining sufficiency of the evidence to raise the jury issue, the

testimony most favorable to the defendant should be accepted." *United States v. Butler*, 485 F.3d 569, 571-72 (10th Cir. 2007) (internal quotation marks omitted). If we find the district court erred, we reverse only where we also find failure to give the instruction prejudiced the defendant. *United States v. Haslip*, 160 F.3d 649, 654 (10th Cir. 1998).

## B. Justification

In order to be entitled to an instruction on the defense of justification, a defendant must prove four elements by a preponderance of the evidence, the first of which is that the defendant faced an "unlawful and present, *imminent*, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury." *United States v. Vigil*, 743 F.2d 751, 755 (10th Cir. 1984) (emphasis added) (internal quotation marks omitted). A court may refuse to give the instruction if it finds insufficient evidence on any one of the four elements. While we have doubts that Mr. Dutton has satisfied other necessary elements, we need only examine the first element and decide that Mr. Dutton's evidence is insufficient to establish an imminent threat. We therefore affirm the district court's refusal to include a justification instruction.

In felon-in-possession cases, we treat the common law defenses of necessity, duress, and justification "under a single, unitary rubric: justification." *Butler*, 485 F.3d at 572 n.1 (internal quotation marks omitted). To be entitled to an instruction on justification, a defendant must show:

(1) that defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;

(2) that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;

(3) that defendant had no reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm; and

(4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.

*Butler*, 485 F.3d at 572 (quoting *Vigil*, 743 F.2d at 755). We further require that even if a defendant's otherwise unlawful conduct may have been justified at some point in time, that justification must persist; the defendant must prove that he abandoned the illegal conduct "at the earliest possible opportunity." *Id.* at 573. If the defendant's proffered evidence fails to "meet a minimum standard *as to each element of the defense* so that, if a jury finds it to be true, it would support an affirmative defense," the defendant is not entitled to an instruction, nor may he burden the trial court and jury with testimony supporting other elements of the defense. *United States v. Bailey*, 444 U.S. 349, 415-16 (1980) (emphasis added).

## C. Mr. Dutton Did Not Face an Imminent Threat Sufficient to Justify His Possession of a Weapon.

The justification defense requirement that the defendants face an "unlawful and present, imminent, and impending" threat ensures that felons may not

"possess a weapon for extended periods of time in reliance on some vague 'fear' of street violence. Indeed, '[i]f ex-felons who feel endangered can carry guns, felon-in-possession laws will be dead letters.'" *Butler* 485 F.3d at 575 (quoting *United States v. Perez*, 86 F.3d 735, 737 (7th Cir. 1996)). Most felon-in-possession cases allowing a justification instruction involve imminent threats that are in close physical and temporal proximity to the defendant's weapon possession. *E.g.*, *United States v. Newcomb*, 6 F.3d 1129, 1135-36, 1138 (6th Cir. 1993) (justification defense allowed where defendant briefly possessed shotgun and shells after disarming dangerous individual who may have gone on to "kill or severely injure a third party"); *United States v. Paolello*, 951 F.2d 537, 542-43 (3d Cir. 1991) (finding imminence sufficient for justification defense where defendant disarmed an assailant in an effort "to avoid being shot" and then fled with the gun in hand); *United States v. Panter*, 688 F.2d 268, 269-72 (5th Cir. 1982) (defendant, who while pinned to the floor after being stabbed in the stomach reached for a club in self-defense but instead grabbed a gun, allowed to assert justification defense to prosecution under predecessor statute to § 922(g)(1), noting that "[t]he right to defend oneself from a deadly attack is fundamental").

For precedent allowing a justification defense involving a remote ongoing threat, Mr. Dutton relies unpersuasively on *United States v. Gomez*, 92 F.3d 770 (9th Cir. 1996). In *Gomez*, the Ninth Circuit vacated a district court order

preventing a convicted felon from presenting evidence regarding justification. Mr. Gomez had been the government's confidential informant in its investigation of a drug dealer attempting to contract the killings of six witnesses who were going to testify against him. *Id.* at 772. The government mistakenly disclosed Mr. Gomez's name in its indictment, and Mr. Gomez began receiving death threats and learned that there was a contract on his life. *Id.* at 773. To hide, Mr. Gomez repeatedly changed houses, slept during the day in parks, and at night either walked around or rode buses for hours. *Id.* Mr. Gomez sought protection without success from federal agents, the county sheriff, his parole agent, and churches. *Id.* He also sought help by taking his story to a newspaper, which wrote about his plight. *Id.* He attempted to meet with his parole officer by falsely claiming that he was using illegal drugs, but he was reincarcerated for this lie. *Id.* While serving this month-long prison sentence, Mr. Gomez received a written death threat from another inmate. *Id.* About a week after he was released from imprisonment on the drug charge, Mr. Gomez received another death threat, and that same day armed himself with a friend's shotgun. *Id.* Two days later, the federal government found Mr. Gomez in possession of the shotgun. *Id.* at 773-74. He was charged and convicted of being a felon-in-possession of a firearm.

The Ninth Circuit held that Mr. Gomez could present evidence on justification because the danger was "present and immediate enough." *Id*. at 776. "It was unlikely [that the dealer] would cool off and lose interest in [the

defendant]" as the dealer had "amply demonstrated his willingness to kill to avoid

conviction" by previously trying to contract to kill witnesses. *Id.* The court

added that the defendant "had already received numerous threats over an extended

period of time" and the fact that "he hadn't been threatened in the last hour or the

last day didn't mean the danger had abated." *Id.* The *Gomez* court noted that

"the unusual nature of the threat distinguishes [Mr. Gomez's] case from most

felon-in-possession cases where a justification defense is raised." *Id.*

Notably, the Ninth Circuit declined to extend *Gomez* the following year in

*United States v. Wofford,* 122 F.3d 787 (9th Cir. 1997). Holding that a defendant

could not present a justification defense for a five-month-old threat, the *Wofford*

court distinguished the "exceptional circumstances" of *Gomez*, where there was a

"clear, highly specific, and credible danger," *Wofford*, 122 F.3d at 790, 791. The

*Wofford* court also approvingly quoted language by Judge Posner limiting *Gomez*:

> The defense of necessity will rarely lie in a felon-in-possession
> case unless the ex-felon, not being engaged in criminal activity,
> does nothing more than grab a gun with which he or another is
> being threatened . . . . [O]nly in the most extraordinary
> circumstances, illustrated by *United States v. Gomez*, where the
> defendant had sought protection from the authorities without
> success, will the defense entitle the ex-felon to arm himself in
> advance of the crisis merely because he fears, however sincerely
> and reasonably, that he is in serious danger of deadly harm.

*Wofford*, 122 F.3d at 791 (alteration in original) (quoting *Perez*, 86 F.3d at 737).

In this case, we do not doubt that Mr. Dutton faced more than a "vague fear

of street violence." *Butler,* 485 F.3d at 575. But even viewing the evidence in the light most favorable to Mr. Dutton, the level of threats he received did not rise to the level of the extraordinary circumstances present in *Gomez.* In *Gomez*, the repeated threats came from someone with a demonstrated willingness to kill, Mr. Gomez repeatedly sought help from law enforcement without success, the latest threat had come two days previous to his arrest for possession, and he had exhausted a variety of other options before arming himself. Here, the police had concluded that Mr. Dutton's assailants did not pose a serious threat of retaliation, the police had cooperated to help protect Mr. Dutton, there were no recent indications of an imminent threat, and there was no evidence that the numerous non-violent measures Mr. Dutton took to protect himself were not working. We disagree with Mr. Dutton's assessment that his only realistic option when he left his place of security was to carry a firearm. We hold that Mr. Dutton was not under a threat sufficiently imminent to justify his continued possession of the firearm.

### III. CONCLUSION

We therefore AFFIRM the district court's order adopting the magistrate judge's recommendation that Mr. Dutton's motion for a jury instruction on the

justification defense be denied.

Entered for the Court

Robert Henry
Chief Circuit Judge