**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
 *Plaintiff-Appellee,*

v.

SYLVESTER J. ALDERMAN,
 *Defendant-Appellant.*

No. 08-30322

D.C. No.
2:08-cr-00084-MJP

OPINION

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted
July 6, 2009—Seattle, Washington

Filed April 15, 2010

Before: Diarmuid F. O'Scannlain, Andrew J. Kleinfeld and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Kleinfeld

5611

**COUNSEL**

Ralph Hurvitz, Seattle, Washington, for the appellant.

Michael S. Morgan, Assistant United States Attorney, Seattle, Washington, for the appellee.

**OPINION**

KLEINFELD, Circuit Judge:

This is a sentence appeal, with two issues. We hold that the first degree theft crime under Washington law of which

Alderman was convicted is a "crime of violence" for purposes of the guidelines enhancement, and that the shooting in this case was an assault under Washington law.

## Facts.

The district court and we have watched Alderman commit the crime on television. The events were recorded by a surveillance camera aimed at the Seattle apartment complex parking lot where they occurred. A man named Roosevelt Montgomery drove up and parked, approached Alderman, and they talked. Then Montgomery began punching Alderman. He got Alderman on the ground and landed numerous punches and a few kicks, while a woman apparently with Montgomery rifled Alderman's pockets. Then the beating ended, and Alderman backed away, hitching up his pants.

Alderman then drew a gun and started shooting toward Montgomery. The tables being turned by the gun, Alderman now chased Montgomery around Montgomery's car, shooting at him, as Montgomery tried to get into his car and drive away. Alderman fired eight shots at Montgomery as he chased him around his car and another car, then left, firing one additional parting shot. He never hit Montgomery, and Montgomery drove off. Montgomery later told police that he was grazed by one bullet, but he did not seek medical attention.

Alderman was a convicted felon, and the Glock nine millimeter pistol he had used to shoot at Montgomery was easily tied to him. He confessed and pleaded guilty to being a felon in possession.[1] In the plea agreement, he admitted that he had previously been convicted of second degree robbery and, in another case, first degree theft.

His guidelines calculation was adjusted upward for the

_____

[1]18 U.S.C. § 922(g)(1).

prior felonies, on the theory that they were "crimes of violence."[2] An additional upward adjustment in his offense level was imposed on the theory that he had used the unlawfully possessed pistol "in connection with another felony," shooting at Montgomery.

Alderman argues that his prior theft conviction could not properly be counted as a "crime of violence" under the guidelines, and that shooting at Montgomery could not properly be deemed a felony.

## Analysis.

We review the district court's interpretation of the U.S. Sentencing Guidelines *de novo*,[3] the district court's factual findings for clear error, and the district court's application of the Guidelines to the facts for abuse of discretion.[4]

Alderman's Washington judgment says that he was convicted in 2005 of "theft in the first degree." The information alleged that he and Bobby Barnard Beasley assaulted a man and took his car "from the person" of the victim. The police report said that he and Beasley stuck a gun in a man's face as the victim was driving away from a Kentucky Fried Chicken, told him he was being robbed, and ripped a necklace off the victim's neck. The victim escaped as Alderman and Beasley drove off in the victim's car. Our question is whether the crime defined by the state statute is "categorically"[5] a crime of violence.

As Alderman concedes, we held in *United States v. Jennings*[6]

---

[2]U.S.S.G. § 2K2.1 (Nov. 2007).

[3]*United States v. Gomez-Leon*, 545 F.3d 777, 782 (9th Cir. 2008).

[4]*Id.* (citing *United States v. Holt*, 510 F.3d 1007, 1010 (9th Cir. 2007)).

[5]*United States v. Taylor*, 495 U.S. 575, 600-02 (1990).

[6]515 F.3d 980 (9th Cir. 2008).

that the relevant portion of Washington first degree theft was indeed a "violent felony" under the Armed Career Criminal Act.[7] The Armed Career Criminal Act uses the same definition for "violent felony" as the Guidelines do for "crime of violence."[8] *Jennings* applies our holding and reasoning in *United States v. Wofford*.[9] Alderman argues that *Jennings* and *Wofford* are no longer good law, because the Supreme Court in *Begay v. United States*[10] narrowed the construction of "violent felony" in a way that excludes Washington first degree theft from the "crime of violence" category.

[1] *Wofford*, another felon in possession case, did a categorical analysis of grand theft from a person under California law.[11] We held that California grand theft from a person was categorically a "violent felony" under the Armed Career Criminal Act because it required direct physical contact between the perpetrator and the victim, thereby creating a serious potential risk of physical injury to another.[12] We held that California grand theft from a person fell within the "otherwise" clause of the subsection of the "violent felony" definition:[13] "burglary, arson, or extortion, involved the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."[14] The risk of physical injury arose because the victim might resist or a bystander intervene and a struggle ensue.[15]

*Jennings*, the Washington case, also involved a sentencing

---

[7]*Id.* at 989.

[8]*Compare* 18 U.S.C. § 924(e)(2)(B) with U.S.S.G. § 4B1.2(a) (2007).

[9]122 F.3d 787 (9th Cir. 1997).

[10]128 S. Ct. 1581 (2008).

[11]*Wofford*, 122 F.3d at 792-94.

[12]*Id.* at 793.

[13]*Id.*

[14]18 U.S.C. § 924(e)(2)(B)(ii).

[15]*Wofford*, 122 F.3d at 793-94.

enhancement on a federal felon in possession conviction.[16] We held that the same conviction as Alderman's under the identical statute was categorically a "violent felony" under the Armed Career Criminal Act.[17] We held that *Wofford* controlled.[18]

The government argues that we should review only for plain error, under Rule 52 and *United States v. Olano*,[19] because Alderman did not argue before the district court that *Begay* undermined *Wofford* and *Jennings*. Our analysis is unaffected by the different standard applicable to plain error, because we conclude that there would be no error even if Alderman had argued from *Begay*. *Begay* leaves the *Wofford-Jennings* holdings in force.

**[2]** In *Begay*, the prior conviction was for drunk driving. The question was whether felony driving under the influence under New Mexico law was a "violent felony" under the Armed Career Criminal Act.[20] The Court held that it was not.[21] The reason was that drunk driving was too dissimilar to the listed crimes — burglary, arson, extortion, and explosives crimes — to fall within the "otherwise involves conduct that presents a serious potential risk of physical injury to another" clause.

> In our view, the provision's listed examples — burglary, arson, extortion, or crimes involving the use of explosives — illustrate the kinds of crimes that fall within the statute's scope. Their presence indicates that the statute covers only *similar* crimes, rather

---

[16]*Jennings*, 515 F.3d at 983.

[17]*Id.* at 989.

[18]*Id.*

[19]62 F.3d 1180, 1187-88 (9th Cir. 1995); *see also United States v. Rendon-Duarte*, 490 F.3d 1142, 1147-48 (9th Cir. 2007).

[20]*Begay*, 128 S. Ct. at 1583.

[21]*Id.* at 1588.

than *every* crime that "presents a serious potential
risk of physical injury to another."[22]

The Court applied a straightforward *ejusdem generis* analysis,
requiring that "otherwise" crimes be "roughly similar, in kind
as well as in degree of risk involved" to the listed crimes.[23]
The listed crimes "typically involve purposeful, violent and
aggressive conduct," while drunk driving, though creating
great risk to others, typically does not.[24] The listed crimes
"also show an increased likelihood that the offender is the
kind of person who might deliberately point the gun and pull
the trigger,"[25] while drunk driving does not.

Likewise, in *Chambers v. United States* the Court held that
criminal "failure to report" for penal confinement was not a
violent felony for purposes of the Armed Career Criminal Act.[26]
The crime was *malum prohibitum*, not *malum in se*. The Court
noted that "the crime amounts to a form of inaction," unlike
the enumerated offenses in the statute.[27] Not showing up is
unlikely to be "purposeful, violent, and aggressive" or to indi-
cate "an increased likelihood that the offender is the kind of
person who might deliberately point the gun and pull the trig-
ger."[28]

**[3]** First degree theft under the pertinent Washington stat-
ute required, when Alderman committed it, a personal, physi-
cal encounter between thief and victim. The property had to

---

[22]*Id.* at 1585 (quoting 28 U.S.C. § 924(e)(2)(B)(ii)).

[23]*Id.*; *see also United States v. Christensen*, 559 F.3d 1092, 1094 (9th
Cir. 2009) ("The Court used an *ejusdem generis* analysis, concluding that
crimes covered by the catch-all clause must involve conduct similar to the
conduct in the four crimes specifically named in the statute[.]").

[24]*Id.*

[25]*Id.* at 1587.

[26]129 S. Ct. 687, 691-92 (2009).

[27]*Id.* at 692.

[28]*Begay*, 128 S. Ct. at 1587.

be "taken from the person" of the victim, not just from his car or his house or business:

> (1) A person is guilty of theft in the first degree if he or she commits theft of:
>
> . . .
>
> (b) Property of any value other than a firearm as defined in RCW 9.41.010 *taken from the person of another*.
>
> (2) Theft in the first degree is a class B felony.[29]

This relevant aspect of Washington first degree theft is similar enough for *ejusdem generis* purposes to the listed crimes, "burglary, arson, or extortion, [or a crime that] involves use of explosives." Like burglary, indeed probably more than most burglaries, theft from the person is a purposeful aggressive act directed toward a person who, unless he submits, invites violence from the criminal. The thief has to be aggressive enough to intimidate the victim into submission or hopeful that despite personal contact the victim will not realize his possession was stolen until it is too late to resist. An offender bold and aggressive enough to steal from the person of another shows a greatly increased likelihood, compared to a drunk driver, that he is "the kind of person who might deliberately point the gun and pull the trigger."[30]

---

[29]Wash. Rev. Code § 9A.56.030 (b) (2005) (emphasis added). There is another subsection of § 9A.56.030(1), subsection (a), which makes the theft of "property or services which exceed(s) one thousand five hundred dollars in value" an instance of theft in the first degree even if the property is *not* taken from the person of another. Alderman's briefs on this appeal, however, proceed uniformly on the basis that the conviction was under subsection (b), so we do as well. We express no view as to whether a conviction under subsection (a) was a crime of violence.

[30]*Begay*, 128 S. Ct. at 1587.

"[P]urposeful, violent and aggressive"[31] conduct cannot mean that violence has to occur, because burglary, which is listed, does not require commission of a violent act or an intent to commit violence. The burglar may hope that the house is empty, an arsonist may hope that the building is empty, and an extortionist may hope that the victim just pays the money without resistance, but they cannot count on peaceful submission from the victim and have to be aggressive enough to be prepared for violent resistance. Where force is actually used or threatened, the crime falls under the first subsection of the guideline,[32] not the subsection which includes the "otherwise" clause covering burglary of a dwelling, etc. Because the first subsection would be superfluous if the "otherwise" clause in the second subsection required actual violence, the "otherwise" clause cannot be construed to require actual violence.[33]

We held in *United States v. Christensen*[34] that under *Begay*, statutory rape is not a "violent felony" because statutory rape may involve consensual sexual intercourse, which is neither

---

[31]*Id.* at 1586.

[32]U.S.S.G. § 4B1.2 defines "crime of violence":

  (a) The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year, that —

  (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

  (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

[33]*See United States v. Wenner*, 351 F.3d 969, 975 (9th Cir. 2003) (rejecting a reading of the catchall phrase in U.S.S.G. § 4B1.2(a)(2) that would make the enumerated examples "mere surplusage"); 2A Norman J. Singer, Sutherland Statutory Construction § 46:6, at 181-94 (6th ed. 2000) (setting forth the canon of statutory construction that each word, clause, and phrase must be given effect).

[34]559 F.3d 1092 (2009).

violent nor aggressive.[35] If not forcible, statutory rape may be just someone too old with a girlfriend or boyfriend too young. It is unlike the listed crimes in not being violent or aggressive (if not forcible) and does not give any indication that the older sexual partner is "the kind of person who might deliberately point the gun and pull the trigger."[36] Nor is it necessarily even purposeful, if the statute does not require knowledge of the victim's age.[37] We said that the conduct, to satisfy *Begay*, had to be purposeful, violent and aggressive, in the context of deciding whether statutory rape was like or unlike burglary of a dwelling, arson, extortion or explosives crimes for *ejusdem generis* purposes.[38] We of course had no occasion to decide just what "violent, purposeful and aggressive" meant in the context of a *malum in se* crime inherently more aggressive than one or two of the listed crimes. The central holding in *Christensen* is that we are to apply an *ejusdem generis* analysis to the "otherwise" clause, and that is what we have done. "The language of a decision is used to explain why the particular result follows from the concrete facts of the case, and must be read with reference to the dispute before the court in that case."[39]

We distinguished *Christensen* in *United States v. Terrell*,[40] on the basis that "the 'typical' case of statutory rape does not involve violent and aggressive conduct," while rape that included sexual assault committed on a sleeping, drugged, or deceived victim left open the "possibility that the victim may figure out what's really going on and decide to resist," as may

---

[35]*Id.* at 1095.

[36]*Begay*, 128 S. Ct. at 1587.

[37]*See* Wash. Rev. Code § 9A.44.079.

[38]*Christensen*, 559 F.3d at 1094-95.

[39]*United States v. Herron*, 45 F.3d 340, 342 (9th Cir. 1995) (citing Karl N. Llewellyn, The Bramble Bush 36 (1930)); *see also United States v. Frank*, 36 F.3d 898, 902 (9th Cir. 1994).

[40]*United States v. Terrell*, 593 F.3d 1084 (9th Cir. 2010).

a victim of theft from a person.[41] Likewise we held in *Terrell* that burglary not in a dwelling fell within the "otherwise" clause even though it did not fall within the designated "burglary of a dwelling" crime.[42] (We note that the decision in *Terrell* is not yet final because the mandate has not issued.)

**[4]** Alderman also argues that his first degree theft conviction should be considered under Washington's 2008 statute,[43] not the 2005 statute under which he was convicted,[44] because the guidelines require that the defendant be sentenced under the version of the guidelines in effect at the time of sentencing.[45] He was indeed sentenced under the version of the guidelines then in effect, and those guidelines directed the court to look at the crime of which he was convicted.[46] He was convicted of the 2005 crime, not the crime as it might have been had he committed it three years after he did.

Alderman also argues that the district court should not have imposed the upward adjustment to his guidelines calculation for possessing the pistol he shot at Montgomery "in connection with another felony offense." His theory is that shooting at Montgomery nine times was not shown to be a felonious

---

[41]*Id.* at 1090.

[42]*Id.* at 1093-95.

[43]In 2007, Washington's theft statutes were amended to exclude theft of a motor vehicle from first degree theft and create a new crime of theft of a motor vehicle. *See* Wash. Rev. Code § 9A.56.030 (2008) (setting out "theft in the first degree — other than firearm or motor vehicle"); Wash. Rev. Code § 9A.56.065 (2008) ("A person is guilty of theft of a motor vehicle if he or she commits theft of a motor vehicle.").

[44]Wash. Rev. Code § 9A.56.030 (2005).

[45]U.S.S.G. § 1B1.11(a).

[46]*See Taylor*, 495 U.S. at 600-02 (courts "look only to the fact of conviction and the statutory definition of the prior offense); *James v. United States*, 550 U.S. 192, 197 (2007) (applying a categorical analysis to how "Florida defined the crime of burglary at the time of James' conviction" even though a different version of the statute was in effect in 2003 when James was sentenced).

assault because the evidence did not show that he intended to hit Montgomery or that Montgomery was put in fear. The district judge found that Alderman shot at Montgomery "to frighten" and "from my review of the videotape, he accomplished that. That's an assault."[47] Indeed.

AFFIRMED.

---

[47] *See also State v. Miller*, 426 P.2d 986, 988 (Wash. 1967) (under Washington law, apprehension of harm may be inferred when a person has a weapon pointed at him).