[No. 19361-9-I.   Division One.   May 9, 1988.]

THE STATE OF WASHINGTON, *Appellant*, v. JAMES WALLACE WHITCOMB, *Respondent*.

*Norm Maleng, Prosecuting Attorney,* and *Ellen O'Neill–Stephens, Deputy,* for appellant.

*David R. Chappel,* for respondent.

SCHOLFIELD, C.J.—The State of Washington appeals the trial court's order setting aside a jury verdict finding James Wallace Whitcomb guilty of the felony charge of attempting to elude a police officer. We reverse.

### FACTS

Whitcomb was charged by information with the crime of attempting to elude a pursuing police vehicle contrary to RCW 46.61.024.

On November 22, 1985, during a week of extensive snowfall, Kent Police Officer Murray and his partner were patrolling in their marked police vehicle, shortly before midnight, traveling southbound on Pacific Highway South, having just left the Kent–Des Moines Road. Whitcomb's vehicle, a 3–wheeled all–terrain vehicle (ATV), pulled alongside the police car in the inside lane. According to Officer Murray, the ATV paralleled the police car for a short distance, during which time the ATV's female passenger looked directly at the officers.

The ATV then accelerated past the police car. Officer Murray estimated that the police vehicle was traveling between 25 and 30 m.p.h. because of the compact snow and ice on the roadway. It was a cold night, below freezing, with patches of fog. The police vehicle's rear tires were chained. According to Officer Murray, the speed limit on the road was 35 m.p.h.

Observing that the ATV had no rear lights, nor was it licensed, the officers accelerated to pursue it. About a block ahead of them was the major intersection of Pacific Highway South and South 240th, controlled by a traffic light. The officers observed the ATV run a red light there. No other traffic was on the road at that time.

At the intersection, the officers put on their red warning lights and siren. The ATV continued to accelerate, and Officer Murray estimated its speed at 45 to 50 m.p.h. This increased the distance between the ATV and the police car to approximately three blocks. Officer Murray testified that it was difficult to see the ATV clearly, because it had no lights, and because it was shooting out a "rooster tail" of snow, similar to that seen when hydroplanes race. The ATV slowed down to negotiate a right–hand turn onto South 252nd, a well traveled residential street with a speed limit of 25 m.p.h. The street had not been plowed, and was covered with compact snow and ice. Although the ATV had slowed down to make the turn, it again accelerated to approximately 40 m.p.h. The police vehicle continued its pursuit, with lights flashing and sirens sounding.

At the end of South 252nd, the ATV turned right onto 19th Court, a steep, unplowed road ending in a cul–de–sac. Whitcomb came to a stop in the cul–de–sac. The police also stopped their vehicle. As Officer Murray walked toward the ATV, Whitcomb turned the ATV toward the right, went up on two wheels, gunned his engine, and started heading past the patrol car. The siren was still sounding, the blue and red lights were flashing, and Officer Murray stood with his right hand raised and yelled at Whitcomb to stop.

As Whitcomb attempted to drive past Officer Murray, the police officer tackled Whitcomb and his passenger and knocked them off the ATV. The ATV flew in the air, and landed on its side. The passenger and driver were lying in a snowbank, where Whitcomb was subsequently arrested. Officer Murray testified he noticed the odor of intoxicants about Whitcomb.

The State also presented testimony from Robert Curtis, a Honda service manager, concerning the ATV's capabilities. Curtis testified that the top speed of Whitcomb's Honda ATV was 60 to 70 m.p.h., even in snow conditions, that the engine would not be loud enough to drown out a police siren, and that because of the small headlight and small

taillight (which might or might not be on), the ATV would not be very visible in the dark, especially at high speed.

Whitcomb presented defense testimony that conflicted with that of the officers. Whitcomb testified that the light at South 240th and Pacific Highway South was green when he traveled through it. Whitcomb testified that he and his passenger turned down South 252nd to visit some friends who lived at the end of the street, and that when they discovered that no one was home, they went down 19th Court to turn around.

Whitcomb testified that he never saw the police until he began to turn around in the cul-de-sac. Whitcomb testified that Officer Murray knocked him off the bike, got him down, grabbed him by the neck, and yelled, "'You got away from us at first but we got you this time.'" Whitcomb also introduced a photograph of a speed limit sign on Pacific Highway South, near South 240th, showing a speed limit of 45 m.p.h.

Shyla Honrud, Whitcomb's passenger, testified that she first noticed the flashing police lights as she and Whitcomb turned onto South 252nd, but because the police car was so far away, she did not think anything of it. Honrud testified that they did not run a red light at South 240th.

The jury found Whitcomb guilty of the crime of attempting to elude a pursuing police vehicle. Whitcomb moved for a new trial or an arrest of judgment, and both parties submitted briefs on the issue.

The trial court overturned the jury verdict, based on its belief that the State had presented insufficient evidence that Whitcomb's conduct created a high probability of harm to lives or property. The trial court's order set aside the jury verdict of guilty on the felony charge of attempting to elude a police officer, but required Whitcomb to answer to the misdemeanor charge of refusing to stop for a police officer. The State appeals the trial court's ruling.

### SUFFICIENCY OF THE EVIDENCE

RCW 46.61.024 defines the crime at issue as follows:

Attempting to elude pursuing police vehicle—License revocation. Any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop *and who drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others* while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and his vehicle shall be appropriately marked showing it to be an official police vehicle.

(Italics ours.)

In *State v. Sherman,* 98 Wn.2d 53, 653 P.2d 612 (1982), a motorcyclist was pursued by officers in a patrol car after he was observed traveling at 85 m.p.h. in a 45 m.p.h. zone. When Sherman was ultimately apprehended, he claimed he was unaware that the police were pursuing him. On appeal Sherman argued, *inter alia,* that the word "indicating" in RCW 46.61.024 was unconstitutionally vague. In analyzing Sherman's contention, the *Sherman* court stated:

The term "indicating" does initially establish an objective inquiry. Generally speaking, a wanton and willful disregard[1] will only be established by circumstantial evidence of the way a defendant drives. . . . The language "drives his vehicle in a manner indicating a wanton and wilful disregard" expresses the State's interest in proscribing conduct exhibiting a certain disposition.

This does not mean the above language establishes solely an objective element of the crime. It establishes only that the State is proscribing both the "conduct" and the "disposition", and that "disposition" invariably is proven by inference from circumstantial evidence. Circumstantial evidence may "indicate" a wanton and willful disregard, but the defendant may rebut that inference from circumstantial evidence. For instance, the defendant may have had a seizure while driving. While his

---

[1]RCW 46.61.024, as it is presently codified, requires a finding of either a willful *or* a wanton disregard for safety of others.

manner of driving would indicate wanton and willful disregard, the defendant would not actually have wanton and willful disregard for others.

*Sherman,* at 58–59.

*State v. Brown,* 40 Wn. App. 91, 697 P.2d 583, *review denied,* 103 Wn.2d 1041 (1985), a case also construing RCW 46.61.024, quoted W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 34 (5th ed. 1984) as follows:

> The usual meaning assigned to "willful," "wanton," or "reckless," according to taste as to the word used, is that the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences. . . .

(Footnotes omitted.) *Prosser and Keeton on Torts,* at 213.

In its oral decision, the trial court below stated that the State presented insufficient evidence that "there was any danger to anybody else, the high probability of harm which must, you must have, was completely lacking", because no pedestrians or other vehicles were present.

■ We hold that the trial court misinterpreted the requirements of RCW 46.61.024. The State need not prove that anyone else was endangered by the defendant's conduct, or that a high probability of harm actually existed. Rather, the State need only show that the defendant engaged in certain conduct, from which a particular disposition or mental state—that of "wanton or wilful disregard for the lives or property of others"—may be inferred.

■ Although the decision to overturn a jury verdict is addressed to the trial court's discretion, the trial court is not permitted to weigh the evidence and substitute its judgment for that of the jury simply because it disagrees with the jury's verdict. *Bunnell v. Barr,* 68 Wn.2d 771, 415 P.2d 640 (1966); *see also State v. Marks,* 71 Wn.2d 295, 427 P.2d 1008 (1967).

The evidence presented to the jury showed that Whitcomb drove his ATV in the dark on a major highway with inadequate lighting on the vehicle, on a night when road conditions were poor and patches of fog were evident. Whitcomb also drove the vehicle at a speed in excess of the speed limit, although there is some dispute as to the speed limit on Pacific Highway South. It may be that Whitcomb was only driving 5 miles over the posted speed limit on Pacific Highway South.[2]

Even though Whitcomb was driving an ATV, which can be handled better than a normal car under adverse conditions of snow and ice, the ATV is not meant to be an on-road vehicle, and was not licensed as such. The State's evidence also indicated that Whitcomb's speed created the "rooster–tailing" effect, rendering it nearly invisible and potentially creating a hazard for vehicles following behind. Whitcomb also ran a red light at South 240th.

In addition, Whitcomb's attitude toward being out on the road in his ATV, which was not street legal, was evident under the deputy prosecutor's cross examination:

Q All right. Now, you knew that this vehicle of yours was not supposed to be on the public highway?
A Definitely.
Q All right. So you knew you were breaking the law?
A It's a minor infraction.
. . .
Q And you knew you were illegal, right?
A Oh, yeah.
Q And you didn't care?
. . .
A If he wanted to pull me over he had that right and I realize that.

---

[2]We note in passing that the Legislature recognizes the traffic infraction of driving too fast for conditions as follows:

(1) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing.

RCW 46.61.400(1), in part.

We hold that this evidence was sufficient for the jury to find that Whitcomb's driving indicated a willful or wanton disregard for the lives or property of others. Evidence of Whitcomb's conduct in operating his unlicensed, inadequately equipped ATV on a public highway in excess of the speed limit on a night with poor road conditions, and his running a red light at a major intersection, when coupled with his attitude of indifference to the rules of the road, as evidenced by his trial testimony, satisfied the statutory criteria. Whitcomb's conduct can certainly be construed to infer that he deliberately disregarded appropriate safety precautions under hazardous road conditions, thus exhibiting a willful or wanton disregard for the lives or property of others.

The State raises several other issues on appeal, but based on our disposition of the first issue, this court need not consider them. The trial court's order of dismissal is reversed, and this case is remanded for reinstatement of the jury verdict of guilty on the felony charge of attempting to elude a police vehicle.

PEKELIS and WINSOR, JJ., concur.