# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee,*

      v.

DEVIN JENNINGS,
                *Defendant-Appellant.*

No. 06-30190

D.C. No.
CR 04-0243 JLR

OPINION

Appeal from the United States District Court
for the Western District of Washington
James L. Robart, District Judge, Presiding

Argued and Submitted
March 8, 2007—Seattle, Washington

Filed February 4, 2008

Before: Diarmuid F. O'Scannlain, A. Wallace Tashima, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Tashima;
Dissent by Judge O'Scannlain

1661

**COUNSEL**

Michael G. Martin, Siderius Lonergan & Martin, Seattle, Washington, for the defendant-appellant.

Carl Andrew Colasurdo, Assistant United States Attorney, Seattle, Washington, for the plaintiff-appellee.

**OPINION**

TASHIMA, Circuit Judge:

In this appeal, Devin Jennings challenges the district court's denial of his motions to suppress evidence and the district court's determination that he was subject to a fifteen-year mandatory minimum sentence under 18 U.S.C. § 924(e), the Armed Career Criminal Act ("ACCA"). Jennings entered a conditional guilty plea to charges of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k). He was sentenced to a fifteen-year term of imprisonment for the felon-in-possession charge, and a five-year concurrent sentence for the second charge.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm Jennings' conviction, but vacate his sentence. We conclude that Jennings did not suffer a violation of his Fourth or Fifth Amendment rights; thus, the challenged evidence was properly held to be admissible. We further conclude, however, that Jennings did not qualify for a fifteen-year mandatory minimum sentence under the ACCA because he has not suffered three prior convictions for "violent felonies" within the meaning of 18 U.S.C. § 924(e)(2)(B).

## BACKGROUND

In August 2003, Jennings was released from Washington state prison after serving seventeen months for attempting to elude a pursuing police vehicle. After his release, Jennings was under community supervision by the Washington State Department of Corrections.

In March 2004, Seattle police found photographs in an impounded car that showed Jennings holding a handgun in February 2004. Jennings' prior felony convictions barred him from possessing a firearm under state and federal law, and a condition of his supervised release included the same restriction. The photos prompted Jennings' community corrections officer, Steven Lambert, to request a Department of Corrections felony warrant for Jennings' arrest. Later that month, Lambert and Seattle police encountered Jennings on a public street and arrested him. During a search incident to the arrest, the officers found a loaded handgun in Jennings' waistband.

Jennings was initially charged with unlawful possession of a firearm under Washington law, and assigned a public defender as counsel for that proceeding. However, a federal criminal complaint was subsequently filed against Jennings, and the state charge was dismissed. On May 7, 2004, two federal Bureau of Alcohol, Tobacco, and Firearms ("ATF") agents arrested Jennings at the King County Jail in Seattle in order to transfer him to federal custody.

At the jail, the ATF agents introduced themselves to Jennings, told him they had a federal warrant for his arrest, and asked if he had any personal property.[1] Outside the jail, as the agents walked Jennings to the agents' vehicle, Jennings made a statement to the effect of: "If this is about the missing serial number, I didn't know that it was missing." He said that he had not learned that the handgun found in his waistband during his arrest was missing its serial number until he was in jail. Agent Korn told him, "Let me read your *Miranda*[2] rights, and then you can tell us your side of the story." After the agent read the *Miranda* warnings, Korn asked Jennings if he understood his rights, and Jennings said yes. Korn asked Jennings if he was willing to waive those rights and talk to the agents; Jennings nodded yes. Jennings then told the agents that he had purchased the handgun recovered during his arrest from a white, blonde-haired male for $300.

Jennings moved to suppress the firearm seized during his arrest by Seattle police as the product of an illegal arrest, and to suppress the statements he made to the ATF agents as obtained in violation of the Fifth and Sixth Amendments. The district court denied both motions after an evidentiary hearing. The court found that the arrest was valid based on legal authority under Wash. Rev. Code § 9.94A.631 and/or § 9.94A.740. It also found that Jennings' statements were not obtained in violation of his constitutional rights, because Jennings had initiated the conversation with the ATF agents and because his subsequent waiver of his *Miranda* rights was valid.

In a superseding indictment, Jennings was charged in Count One with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and qualifying as an armed

---

[1]This account of the agents' interaction with Jennings is based on the undisputed testimony of Agent Korn at the suppression hearing.

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

career criminal under 18 U.S.C. § 924(e)[3] for purposes of determining the mandatory minimum sentence. The superseding indictment alleged that Jennings had a number of adult felony convictions under Washington law, including a 1995 first degree theft conviction, a 1998 second degree assault conviction, and a 2002 conviction for attempting to elude a pursuing police vehicle.[4] Count Two of the superseding indictment charged Jennings with possession of a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k).[5]

Jennings filed a motion to dismiss the armed career criminal allegation, which the district court denied. It held that both Jennings' 1995 theft conviction and his 2002 eluding police

---

[3]That statute provides:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years . . . .

18 U.S.C. § 924(e)(1).

[4]Several narcotics-related convictions were also listed, none of which is at issue in this appeal. Jennings' conviction for attempting to elude a pursuing police vehicle was under the following statute:

> Any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and his vehicle shall be appropriately marked showing it to be an official police vehicle.

Wash. Rev. Code § 46.61.024 (2001).

[5]A third count, which was later amended and then dismissed, charged Jennings with possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A).

conviction were "violent felonies" and thus predicate offenses under 18 U.S.C. § 924(e), because court documents regarding Jennings' guilty pleas in both cases showed that Jennings admitted to conduct that presented a "serious potential risk of physical injury to another" within the meaning of 18 U.S.C. § 924(e)(2)(B)(ii). As it was undisputed that Jennings' 1998 assault conviction was a violent felony, the court concluded that Jennings had three predicate offenses, qualifying him as an armed career criminal under 18 U.S.C. § 924(e).

Jennings then pleaded guilty to Counts One and Two, reserving his right to contest his classification as an armed career criminal for sentencing purposes and the right to appeal the denial of his suppression motions. At sentencing, the court again found that Jennings qualified as an armed career criminal, and sentenced him to the mandatory minimum sentence of 180 months' imprisonment under 18 U.S.C. § 924(e)(1) for Count One, and to a concurrent sentence of 60 months' imprisonment for Count Two. This appeal followed.

## DISCUSSION

### I. Motion to Suppress the Firearm

Jennings first argues that his arrest in March 2004 was illegal under Washington state law because it was based on an invalid arrest warrant issued by his community corrections officer. He contends that his arrest was therefore unreasonable under the Fourth Amendment and that the firearm recovered from him during the arrest should be suppressed as the fruit of an unlawful search. *See United States v. Mota*, 982 F.2d 1384, 1388-89 (9th Cir. 1993) (holding a search incident to arrest unconstitutional where the arrest itself was not authorized by state law). We review de novo whether a search or seizure was lawful. *United States v. Morales*, 252 F.3d 1070, 1073 (9th Cir. 2001).

[1] In this case, we need not address the validity of the warrant because Washington law authorized Jennings' arrest even

without a warrant, on two distinct grounds. *See United States v. Cox*, 475 F.2d 837, 841 n.2 (9th Cir. 1973) ("[I]f the arresting officer himself originally had ample probable cause to arrest, the invalidity of the warrant would not be fatal to the government's cause."). First, Washington law authorizes community corrections officers, such as Lambert, to arrest or cause the arrest without a warrant of their supervisees for violations of their conditions of supervision. Wash. Rev. Code §§ 9.94A.631, 9.94A.740(1). The photographs of Jennings brandishing a handgun which was clearly loaded gave Lambert ample basis to believe that Jennings had violated the conditions of his supervision. Second, Washington police officers possess statutory authority to make warrantless public arrests for felonies. Wash. Rev. Code § 10.31.100. Officer Cobane, one of the arresting Seattle police officers, had seen the photographs and knew that Jennings had prior felony convictions. This knowledge gave the officer probable cause to arrest Jennings for the crime of being a felon in possession of a firearm (a felony under both state and federal law). *See* Wash. Rev. Code § 9.41.010(11)-(12); Wash. Rev. Code § 9.41.040(1); *see also* 18 U.S.C. § 922(g)(1).

**[2]** Jennings' argument that his arrest was invalid under Washington law, and that the resulting search was unreasonable under the Fourth Amendment, fails. The district court did not err in denying his motion to suppress the fruits of the search incident to his arrest.

## II. Motion to Suppress Statements

Jennings also contends that the district court should have suppressed the statements he made to the ATF agents on May 7, 2004, because those statements were obtained in violation of his rights under the Fifth Amendment. Jennings argues that because he was represented by counsel at that point, the federal agents could not properly question him unless Jennings himself initiated the conversation. Jennings claims that it was the federal agents who initiated communications with him,

which rendered his subsequent waiver of his Fifth Amendment rights invalid. Our review of the voluntariness of a *Miranda* waiver is de novo, but we will not disturb the district court's underlying factual findings unless they are clearly erroneous. *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir.), *amended by* 416 F.3d 939 (9th Cir. 2005).

**[3]** Under *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981), a suspect in custody who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." In *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46 (1983), a plurality of the Supreme Court found that the defendant had initiated further communication by asking police, during a transfer from the police station to jail, "What is going to happen to me now?" Because the question "evinced a willingness and a desire for a generalized discussion about the investigation . . . [and] was not merely a necessary inquiry arising out of the incidents of the custodial relationship," the plurality concluded that the *Edwards* rule had not been violated.[6] *Id.*

**[4]** Here, the undisputed evidence shows that Jennings initiated the conversation regarding his case by bringing up the subject of the gun and the missing serial number to the agents.[7] Up until then, the agents had spoken with Jennings only to tell him who they were and to ask him whether he had personal

---

[6]Justice Powell concurred in the judgment, finding that "the facts and circumstances, when viewed in their entirety, clearly establish a valid waiver of the right to counsel." *Bradshaw*, 462 U.S. at 1050 (Powell, J., concurring in judgment).

[7]We assume without deciding that Jennings' request to be represented by counsel on the state criminal charge triggered the *Edwards* rule for purposes of his communications with the federal ATF agents.

property to retrieve, communications which were wholly unrelated to the charge against Jennings. Therefore, the district court's factual finding that it was Jennings who initiated communication about the investigation was not clearly erroneous. *See United States v. Most*, 789 F.2d 1411, 1416 (9th Cir. 1986) (reviewing question of whether defendant initiated conversation under clearly erroneous standard).

**[5]** As the *Edwards* rule against police-initiated communications does not apply, we must determine whether Jennings validly waived his Fifth Amendment rights by evaluating whether Jennings' "waiver [was] made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444; *see also Bradshaw*, 462 U.S. at 1046. The evidence shows that the agents administered the necessary warnings under *Miranda*, and Jennings has not argued that his waiver was involuntary. Moreover, Agent Korn's response to Jennings' initial statements — "Let me read your *Miranda* rights, and then you can tell us your side of the story" — was not coercive, leaving Jennings with the option of continuing the conversation or not, as he desired. We therefore conclude that Jennings' Fifth Amendment rights were not violated; consequently, there was no basis for suppressing his statements to the ATF agents.

## III.   Armed Career Criminal Classification

**[6]** Jennings would ordinarily have faced a statutory maximum sentence of ten years for the offense of being a felon in possession of a firearm under 18 U.S.C. § 922(g). *See* 18 U.S.C. § 924(a)(2). Under the ACCA, however, a person convicted of violating 18 U.S.C. § 922(g) faces a mandatory minimum sentence of fifteen years if he has three previous convictions for "a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1). The burden is on the government to show that the defendant has three qualifying offenses. *United States v. Franklin*, 235 F.3d 1165, 1172 (9th Cir. 2000). A "violent felony" includes "any crime punishable by imprisonment for a term exceeding one year . . . that is burglary, arson,

or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . ." 18 U.S.C. § 924(e)(2)(B)(ii).

Here, the district court found that both Jennings' 2002 eluding police conviction and his 1995 theft conviction qualified as violent felonies because they involved "conduct that presents a serious potential risk of physical injury to another." Jennings argues that the district court was incorrect as to both convictions. We review de novo whether a conviction is a predicate felony under § 924(e). *United States v. Smith*, 390 F.3d 661, 663 (9th Cir. 2004), *amended by* 405 F.3d 726 (9th Cir.), *cert. denied*, 546 U.S. 905 (2005).

To determine whether a prior conviction qualifies as a violent felony under 18 U.S.C. § 924(e), we apply the "categorical approach" outlined by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990). Under that approach, we initially evaluate whether a defendant's prior conviction corresponds to an offense enumerated as a violent felony in § 924(e)(2) by examining only "the fact of conviction and the statutory definition of the prior offense." *Id.* at 602. Where the statute of conviction is overinclusive, criminalizing some conduct that would qualify as a predicate offense and other conduct that would not, *Taylor* authorizes courts to "go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of [the enumerated offense]." *Id.* In such cases, we employ the "modified categorical approach" and examine the charging paper and jury instructions to determine whether the defendant was necessarily convicted of an offense corresponding to one listed in § 924(e)(2). *Id.*

In *Shepard v. United States*, 544 U.S. 13, 19 (2005), the Court affirmed that the *Taylor* categorical and modified categorical approaches apply to prior convictions obtained through guilty pleas. The Court held that in applying the modified categorical approach to pleaded convictions, courts were

limited to examining "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or . . . some comparable judicial record of this information." *Id.* at 26. By contrast, courts may not review police reports, complaint applications, and similar documents. *Id.* at 16, 21-23.

### A. Sixth Amendment Challenge to Judicial Categorization of Prior Offenses as Violent Felonies

[7] Preliminarily, Jennings contends that there is constitutional doubt as to whether a district court may determine that prior convictions qualify as violent felonies for purposes of increasing the statutory maximum under 18 U.S.C. § 924(e). He contends that, due to this supposed constitutional doubt, the ACCA should be interpreted to require formal pleading and proof of prior convictions and their nature as violent felonies. This contention is squarely foreclosed by Supreme Court and Ninth Circuit precedent, which rejects Sixth Amendment challenges to the judicial categorization of prior convictions under the ACCA. *See James v. United States*, 127 S. Ct. 1586, 1600 (2007) (holding that application of the *Taylor* categorical approach to determine whether an offense presents a serious potential risk of physical injury to others "raises no Sixth Amendment issue"); *Shepard*, 544 U.S. at 24-26 (four justices stating that limiting documents regarding a prior conviction that a court may consider was necessary to *avoid* the Sixth Amendment problems that might otherwise result if a judge were to make findings as to disputed facts underlying the conviction); *id.* at 36-38 (O'Connor, J., dissenting) (three more justices concluding that there would have been no constitutional problem with a rule that allowed judges to consult documents such as police reports and complaint applications, where the underlying facts were undisputed); *United States v. Von Brown*, 417 F.3d 1077, 1079 (9th Cir. 2005) (per curiam) ("When the *Taylor* approach is followed, the categorization of a prior conviction as a 'violent felony' or a 'crime of vio-

lence' is a legal question, not a factual question coming within the purview of *Apprendi*, *Blakely*, and *Booker*.");**8** *Smith*, 390 F.3d at 666-67 (holding that application of modified categorical approach to determine whether prior offenses fell under ACCA did not violate defendant's Sixth Amendment rights). We thus reject Jennings' "constitutional doubt" contention.

## B.   Theft

[8] Jennings was convicted of theft under Wash. Rev. Code § 9A.56.030(1)(b), which states: "A person is guilty of theft in the first degree if he or she commits theft of . . . [p]roperty of any value . . . taken from the person of another." We have previously held that the crime of grand theft from a person under California law categorically constitutes a violent felony under the ACCA. *United States v. Wofford*, 122 F.3d 787, 794 (9th Cir. 1997). The statute at issue in *Wofford* defined the offense as "theft committed . . . when the property is taken from the person of another." *Id.* at 792 (quoting Cal. Penal Code § 487(2)). We now hold that the crime of first degree theft from a person under Washington law also categorically constitutes a violent felony under the ACCA.

Despite *Wofford* and the facial similarity between the California and Washington definitions of theft from the person of another, Jennings argues that an offense under Wash. Rev. Code § 9A.56.030(1)(b) is not categorically a crime of violence. Jennings attempts to distinguish *Wofford* by arguing that the Washington offense of theft from the person, unlike the California offense considered in *Wofford*, may not require that the property "be in some way actually upon or attached to the person, or carried or held in actual physical possession." *Cf. Wofford*, 122 F.3d at 792 (discussing California case law); James O. Pearson, Jr., Annotation, *What Consti-*

---

**8***United States v. Booker*, 543 U.S. 220 (2005); *Blakely v. Washington*, 542 U.S. 296 (2004); *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

*tutes "Larceny From a Person"*, 74 A.L.R. 3d. 271 (1976 & Supp.) ("[T]he courts have split, one group taking the position that the property must have been on the victim's person when taken and the other group holding that it is sufficient if the property was merely within the victim's immediate presence."); *see also United States v. Reina-Rodriguez*, 468 F.3d 1147, 1152 (9th Cir. 2006) (stating that in applying the categorical approach, "we are bound by the state court's interpretation of the statute"), *overruled on other grounds by United States v. Grisel*, 488 F.3d 844, 851 (9th Cir. 2007) (en banc). Therefore, because, as Jennings surmises, a person could be convicted of theft from the person under Washington law without "direct physical contact between the perpetrator and the victim," he argues that the Washington offense of theft from a person need not present a serious potential risk of physical injury to another. *See Wofford*, 122 F.3d at 793 (noting that element of direct physical contact between thief and victim creates heightened risk of confrontation).

**[9]** A recent Washington case, however, forecloses Jennings' argument that Washington may interpret "from the person of another" more broadly than California. In *State v. Nam*, 150 P.3d 617, 621 (Wash. Ct. App. 2007), the court interpreted the term "from the person" in Washington's robbery definition, Wash. Rev. Code § 9A.56.190, to mean "something on or attached to a person's body or clothing." The court concluded that the state failed to meet its burden of proving that a defendant took something "from [the victim's] person" when, in attempting to show that the defendant robbed the victim of her purse, the state presented evidence only that the defendant took a purse sitting next to the victim on the passenger seat of the car, but no evidence that the purse was attached to the victim at any point during the encounter. *Id.*

**[10]** We see no basis to conclude that the Washington courts would depart from this interpretation of the phrase "from the person" in the context of applying the theft statute. Thus, we conclude that theft from the person of another under

Washington law means theft of "something on or attached to a person's body or clothing." This definition is indistinguishable from the California definition of grand theft at issue in *Wofford*; therefore, *Wofford*'s holding directly controls. We hold that first degree theft from a person under Wash. Rev. Code § 9A.56.030(1)(b) is categorically a violent felony under the ACCA.

## C. Attempting to Elude a Pursuing Police Vehicle

[11] Under our binding precedent, Jennings' conviction for attempting to elude a pursuing police vehicle under Wash. Rev. Code § 46.61.024 is not categorically a violent felony.[9] *United States v. Kelly*, 422 F.3d 889, 895 (9th Cir. 2005) (holding that an offense under Wash. Rev. Code § 46.61.024

---

[9]We disagree with the dissent's view that *United States v. Kelly*, 422 F.3d 889 (9th Cir. 2005), has been effectively overruled by *Gonzales v. Duenas-Alvarez*, 127 S. Ct. 815 (2007), and *James v. United States*, 127 S. Ct. 1586 (2007). While some of the reasoning in *Kelly* has been undermined by those cases, its result is supported by *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc), and *United States v. Vidal*, 504 F.3d 1072, 1082 (9th Cir. 2007) (en banc). Wash. Rev. Code § 46.61.024 explicitly encompasses conduct that does not present a potential risk of harm to others, namely conduct that only "indicat[es] a wanton or wilful disregard for the . . . *property* of others." The statute is therefore expressly broader than the generic definition of a violent felony, and does not, under our case law, come within the class of statutes covered by *Duenas-Alvarez* and *James*. *See Grisel*, 488 F.3d at 850 ("Where . . . a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination' is required to hold that a realistic probability exists that will apply its statute to conduct that falls outside the generic definition of the crime. The state statute's greater breadth is evident from its text.") (quoting *Duenas-Alvarez*, 127 S. Ct. at 822); *Vidal*, 504 F.3d at 1082 ("[W]hen '[t]he state statute's greater breadth is evident from its text,' a defendant may rely on the statutory language to establish the statute as overly inclusive.") (quoting *Grisel*, 488 F.3d at 850). As a result, even though the analysis in *Kelly*, on its own terms, is perhaps questionable and aspects of *Kelly* have been undermined by *Duenas-Alvarez* and *James*, there is insufficient justification for this three-judge panel to overrule the holding in *Kelly*.

does not invariably involve "conduct that presents a serious potential risk of physical injury to another").[10] Normally, following *Shepard*, we would determine whether a different outcome results under the modified categorical approach. That is, we would examine the judicially noticeable documents that establish the factual basis for Jennings' conviction to determine if Jennings' offense conduct presented a serious potential risk of physical injury to another.

Jennings, however, argues that we should not use the modified categorical approach when we are inquiring whether a crime is one that "otherwise involves conduct that presents a serious potential risk of physical injury to another" under 18 U.S.C. § 924(e)(2)(B)(ii). Jennings also argues that, even if we do apply the modified categorical approach, the judicially noticeable documents regarding his eluding police conviction do not establish that the conviction was in fact for conduct presenting a serious potential risk of physical injury to others. We reject Jennings' first argument, but find it unnecessary to reach the second.

> 1. *Applicability of the Modified Categorical Approach to the "Otherwise" Clause of 18 U.S.C. § 924(e)(2)(B)(ii)*

[12] We conclude that generally the modified categorical approach may be applied in determining whether a conviction qualifies as a violent felony under § 924(e)(2)(B)(ii)'s "otherwise" clause (sometimes termed the catchall clause). In the past, we have expressed doubt as to whether the modified categorical approach applies to the catchall clause in U.S.S.G. § 4B1.2(a), as well as in § 924(e)(2)(B)(ii).[11] *See Kelly*, 422

---

[10]Our holding in *Kelly* applies to the version of § 46.61.024 that was in effect until its amendment in 2003. *See Kelly*, 422 F.3d at 893 n.1. Jennings was convicted under that version of the statute.

[11]Because U.S.S.G. § 4B1.2(a)'s definition of a crime of violence contains language tracking the "otherwise" clause in § 924(e)(2)(B)(ii), we have interpreted the provisions in a parallel manner. *See, e.g.*, *United States v. Melton*, 344 F.3d 1021, 1027 (9th Cir. 2003).

F.3d at 895; *United States v. Fish*, 368 F.3d 1200, 1204 & n.4 (9th Cir. 2004); *United States v. Parker*, 5 F.3d 1322, 1325-26 (9th Cir. 1993).

This uncertainty can be traced to *Parker*, in which we noted that Ninth Circuit precedent required a strict categorical approach to characterizing convictions as predicate offenses under the ACCA, looking only to the statutory elements and the fact of conviction. We then suggested that *Taylor* might have overruled that precedent to permit a modified categorical approach only in evaluating offenses potentially corresponding to the generic crime of burglary. *Parker*, 5 F.3d at 1325-26 (discussing *United States v. Sherbondy*, 865 F.2d 996 (9th Cir. 1988)). We ultimately avoided ruling on whether the modified categorical approach applied to the catchall clause of § 924(e)(2)(B)(ii) because we concluded that even assuming that the modified categorical approach applied, the offense in question did not qualify as a violent felony. *Id.* at 1326-27. In *Fish* and *Kelly* we followed a similar route, leaving undecided the question of the modified categorical approach's applicability. *Kelly*, 422 F.3d at 895; *Fish*, 368 F.3d at 1204.

The reasons we originally suggested in *Parker* for interpreting *Taylor* narrowly, and restricting the modified categorical approach to convictions potentially corresponding to the generic offense of burglary, are no longer particularly strong ones in light of subsequent developments. The first reason given in *Parker* was that "nothing in *Taylor* suggests that the Court intended to approve a general departure [from the strict categorical approach] in all cases." 5 F.3d at 1326. Since then, however, in *Shepard*, the Court has explicitly stated otherwise, writing that "[a]lthough *Taylor* involved prior burglaries, as this case does, our holding in *Taylor* covered other predicate ACCA offenses." *Shepard*, 544 U.S. at 17 n.2. In fact, in *Taylor* itself, the Court stated that it was addressing "a . . . general issue—whether the sentencing court in applying § 924(e) must look only to the statutory definitions of the

prior offenses, or whether the court may consider other evidence concerning the defendant's prior crimes." 495 U.S. at 600. The Supreme Court's decisions thus give every indication that both the categorical and modified categorical approaches apply to all types of prior offenses, considered under any portion of § 924(e)(2).

Second, the *Parker* decision emphasized language in *Taylor* stating that the modified categorical approach would apply in a " 'narrow range of cases.' " 5 F.3d at 1326 (quoting *Taylor*, 495 U.S. at 602). However, the *Taylor* Court's statement in its entirety was that the "categorical approach . . . may permit the sentencing court to go beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of generic burglary." *Taylor*, 495 U.S. at 602. The more natural reading of that sentence suggests that the Court believed that there would only be a "narrow range of cases" in which juries were required to find facts extending beyond the statutory definition of the offense, so that the modified categorical approach would often be unavailable — not that the modified categorical approach would be limited in application to burglary offenses. This view is borne out by the *Shepard* Court's characterization of its holding in *Taylor* as applying to all predicate ACCA offenses, 544 U.S. at 17 & n.2, as well as by other circuits' subsequent willingness to apply the modified categorical approach broadly to offenses potentially falling under any clause of 18 U.S.C. § 924(e)(2).[12]

[13] Thus, *Parker*'s rationale for questioning the applicability of the modified categorical approach to offenses other than burglary no longer withstands scrutiny. Jennings himself does not provide any rationale for why the modified categorical approach should not be applied to the ACCA's catchall clause.[13]

---

[12]*See, e.g.*, *United States v. McCall*, 439 F.3d 967, 969-70, 973 (8th Cir. 2006) (en banc); *United States v. Hargrove*, 416 F.3d 486, 494-99 (6th Cir. 2005); *United States v. Sacko*, 178 F.3d 1, 4-5, 7 (1st Cir. 1999).

[13]We recently wrote: "Although we have previously left open the question whether the modified categorical approach applies to cases arising

As a consequence, and lacking any concrete reason to conclude that Congress intended otherwise, we believe that it is more sensible to apply the modified categorical approach uniformly in evaluating whether a conviction falls under any portion of the ACCA definition of a "violent felony."

### 2. Application of the Modified Categorical Approach to Jennings' Offense

Although we conclude that the modified categorical approach applies under the catchall clause, we nonetheless further conclude that it cannot be applied to Wash. Rev. Code § 46.61.024.

In our recent en banc decision in *Navarro-Lopez v. Gonzales*, 503 F.3d 1063 (9th Cir. 2007) (en banc), we considered whether a conviction under Cal. Penal Code § 32 (accessory after the fact), was a crime involving moral turpitude ("CIMT"). First, we determined that § 32 was not categorically a CIMT because the statute prohibits conduct that is "broader than the generic definition of a [CIMT]." *Id.* at 1073. We then noted that "where a state statute is categorically broader than the generic definition of a crime, we employ a modified categorical approach." *Id.* (citing *Kepilino v. Gonzales*, 454 F.3d 1057, 1062 (9th Cir. 2006)).

*Navarro-Lopez* then went on to consider whether the modified categorical approach was applicable to the crime at issue. We stated:

> The modified categorical approach, however, only applies when the particular elements in the crime of

under the 'catchall' provision, we see no reason why it would not apply to that provision." *United States v. Piccolo*, 441 F.3d 1084, 1088 n.7 (9th Cir. 2006) (citation omitted) (stating that the government could still attempt to prove that a particular offense fell under the catchall clause by using the modified categorical approach, although the statutory offense did not categorically qualify).

conviction are broader than the generic crime. When the crime of conviction is missing an element of the generic crime altogether, we can never find that "a jury was actually required to find all the elements of" the generic crime.

*Id.* (citing *Li v. Ashcroft*, 389 F.3d 892, 899-901(9th Cir. 2004) (Kozinski, J., concurring)(providing examples)). We further noted that "[t]his same analysis applies in cases, as the one currently before us, where courts review plea agreements instead of jury verdicts." *Id.* at 1073 n.10.

We then held that because Cal. Penal Code § 32 lacks an element of the generic crime — specifically, the requisite depravity — to constitute moral turpitude, "[t]he crime of conviction can never be narrowed to conform to the generic crime because the jury is not required — as *Taylor* mandates — to find all the elements of the generic crime." *Id.* (footnote omitted). Thus, we concluded that the modified categorical approach could not be used to conform the defendant's conviction to the generic definition of a CIMT. *Id.*

Applying *Navarro-Lopez* to the case at bench, it is clear that the modified categorical approach cannot be used to conform Jennings' conviction under Wash. Rev. Code § 46.61.024 to the generic definition of a "violent felony" under the ACCA, 18 U.S.C. § 924(e), because Jennings' crime of conviction, like Navarro-Lopez's, is missing an element of the generic crime.

**[14]** The ACCA's catchall provision applies to "conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). Wash. Rev. Code § 46.61.024, however, does not require proof of any actual or potential risk of harm to others for a conviction. *See Kelly*, 422 F.3d at 893-94 (stating that to support a conviction under Wash. Rev. Code § 46.61.024, "the conduct of the defendant need not pose any actual danger or create a serious risk of

harm to anyone. The conduct need only be such as to permit an inference about the defendant's 'disposition or mental state.' " (citations omitted)).[14] In other words, Washington's attempting to elude a pursuing police vehicle statute "is missing an element of the generic crime" — here, the actual or potential risk of harm to another — "altogether." *Narvarro-Lopez*, 503 F.3d at 1073. A jury would not have to find that such a risk was posed for *any* conviction under Wash. Rev. Code § 46.61.024 — it simply is not an element of the crime.

[15] We thus conclude that Jennings was not convicted of all of the elements of a generic violent felony.

Because of our conclusion, we need not decide whether certain admissions that Jennings made as to his conduct for sentencing purposes can be considered in applying the modified categorical approach. Even if those admissions amounted to an admission that Jennings' conduct presented a serious potential risk of physical injury to another, "those admissions could not be used to modify the crime because they were not necessary for a conviction." *Navarro-Lopez*, 503 F.3d at 1073 (citing *Shepard*, 544 U.S. at 24).

[16] As a consequence, Jennings has suffered only two predicate violent felonies for purposes of the ACCA: his 1995 theft conviction and his 1998 assault conviction. Because Jennings' 2002 attempting to elude a pursuing police vehicle conviction is not a qualifying violent felony, the district court erred in holding that Jennings was subject to the fifteen-year mandatory minimum sentence under the ACCA.

## CONCLUSION

Because Jennings' Fourth and Fifth Amendment rights were not violated, the district court did not err in denying his

---

[14]The pre-2003 version of the statute, Wash. Rev. Code. § 46.61.024 (2001), is quoted in full in footnote 4, *supra*.

motions to suppress. However, because Jennings has not suffered the requisite number of qualifying convictions, the district court erred in sentencing him as an armed career criminal under 18 U.S.C. § 924(e). The judgment of conviction is affirmed, but the sentence is vacated and the case remanded for resentencing.

**Conviction AFFIRMED, sentence VACATED and REMANDED.**

O'SCANNLAIN, Circuit Judge, dissenting:

The court's opinion is premised on the mistaken assumption that *United States v. Kelly*, 422 F.3d 889 (9th Cir. 2005), remains good law after the Supreme Court effectively overruled it in *Gonzales v. Duenas-Alvarez*, 127 S. Ct. 815 (2007), and *James v. United States*, 127 S. Ct. 1586 (2007). Not only does the majority put our court at odds with the Supreme Court, but it also perpetuates a split with every other circuit that has considered whether attempting to elude a police officer is categorically a violent felony. I respectfully dissent from the majority's reliance on this wrongly decided and now untenable case.

I

A

In *Duenas-Alvarez*, 127 S. Ct. at 822, the Supreme Court held that "to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." The Court thus rejected the notion that the *Taylor* categorical

approach requires that every possible scenario covered by the state statute fall within the generic definition of a crime. *See Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1072 (9th Cir. 2007) (en banc) (acknowledging that *Duenas-Alvarez* "cautioned against employing 'legal imagination' " when applying the *Taylor* categorical approach).

In *James*, the Court further clarified the *Taylor* categorical approach as it applies to the residual provision of the Armed Career Criminal Act ("ACCA"):

> We do not view that approach as requiring that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony. Rather, the proper inquiry is whether the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious potential risk of injury to another. . . . As long as an offense is of a type that, *by its nature*, presents a serious potential risk of injury to another, it satisfies the requirements of § 924(e)(2)(B)(ii)'s residual provision.

127 S. Ct. at 1597 (internal citations omitted) (emphasis added). The Court explicitly recognized that "ACCA does not require metaphysical certainty" but "speaks in terms of 'potential risk,' " which "are inherently probabilistic concepts." *Id.* "Indeed, the combination of the two terms suggests that Congress intended to encompass possibilities even more contingent or remote than a simple 'risk,' much less a certainty." *Id.*

In contrast, the court in *Kelly* conceived of the categorical approach as an all-or-nothing proposition: "Under *Taylor*, the question is not whether, based on the facts in 'most cases' in which convictions are obtained under the statute, the conduct was a 'violent felony' under federal law. Rather, the question is whether *all conduct—including the most innocent conduct*

—prohibited by the state statute qualifies as a 'violent felony.' " 422 F.3d at 894 (emphasis added). While the Washington attempting to elude statute criminalizes conduct that "*might have* involved actual endangerment," the *Kelly* court insisted that "*Taylor* requires '*must have*.' " *Id.* at 893-94 (emphasis added).

Not only did *Kelly* misread the ACCA, which by its terms ("*potential* risk") does not require actual endangerment, much less an actual risk of endangerment, it also fundamentally misconstrued the *Taylor* categorical approach as requiring that every imaginable fact pattern falling within the ambit of the state statute also satisfy ACCA's definition of a violent felony. Indeed, *Kelly*'s misconstruction of the categorical approach is evidenced by its rejection of a Fourth Circuit opinion that "bas[ed] its analysis on the factual situation 'in most cases' " as "*not* engaging in a *Taylor* categorical analysis." *Id.* at 894 (quoting *United States v. James*, 337 F.3d 387, 391 (4th Cir. 2003)) (emphasis added).

The law of our circuit is that a three-judge panel may "reject [a] prior opinion of this court as having been effectively overruled" when an intervening Supreme Court case "ha[s] undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Because the Supreme Court unequivocally rejected *Kelly*'s interpretation of the categorical approach in *Duenas-Alvarez* and *James*, I cannot join in the majority's reliance on *Kelly* as "our binding precedent." *Maj. op.* at 1677.

B

Notwithstanding its flawed application of the *Taylor* categorical approach, *Kelly* also contains serious errors in construing both the generic crime and state statute of conviction.

As *James* made clear, the ACCA residual clause speaks in terms of "serious *potential* risk," not actual risk or actual

endangerment. Nevertheless, the *Kelly* court apparently ignored the plain language of the identical phrase contained in United States Sentencing Guideline ("U.S.S.G.") § 4B1.2(a)(2) in concluding that RCW § 46.61.024 is not categorically a crime of violence. *See, e.g.*, *Kelly*, 422 F.3d at 893 (noting that under the state statute, "the conduct of the defendant need not *pose any actual danger* or *create a serious risk of harm* to anyone") (emphasis added); *id.* at 894 (stating that the "federal 'crime of violence' guideline . . . *requires endangerment* of another person") (emphasis added). Hence, *Kelly* failed to recognize that the statutory language "encompass[es] possibilities even more contingent or remote than a simple 'risk,' much less a certainty." *James*, 127 S. Ct. at 1597; *see also United States v. Martin*, 378 F.3d 578, 583 (6th Cir. 2004) ("To require crimes of violence in all fact patterns to lead to a violent or harmful end not only would ignore our categorical approach to this inquiry, but it would read the 'serious potential risk of physical injury' language out of the Guideline.").

Furthermore, *Kelly* erred in reading a key phrase out of RCW § 46.61.024, which prohibits "driv[ing] [a] vehicle *in a manner indicating* a wanton or wilful disregard for the lives or property of others." RCW § 46.61.024 (emphasis added). By its very terms ("in a manner indicating"), the statute criminalizes *conduct* sufficient to create an inference about the defendant's mental state.

In *State v. Sherman*, 653 P.2d 612, 616 (Wash. 1982) (en banc), the seminal Washington Supreme Court case interpreting RCW § 46.61.024, the court emphasized that the phrase "in a manner indicating a wanton and wilful[1] disregard" contains "both an objective and subjective component":

---

[1]The statute originally used the term "wanton and wilful," which was changed to "wanton or wilful" effective June 10, 1982. Laws of 1982, 1st Ex. Sess., ch. 47, § 25. *See State v. Stayton*, 691 P.2d 596, 597 n.1 (Wash. Ct. App. 1984).

> Generally speaking, a wanton and willful disregard
> will only be established by circumstantial evidence
> of the way a defendant drives. . . . [T]he State is only
> interested in punishing such a mental state *when it is
> exhibited*. A misanthrope may sit quietly in his room
> feeling wanton and willful disregard for the world,
> but *unless he demonstrates his feelings through
> conduct*—or in this statutory context drives "in a
> manner indicating" his feelings—the State is content
> to let him brood. The language "drives his vehicle in
> a manner indicating a wanton and wilful disregard"
> expresses the State's interest in proscribing *conduct
> exhibiting a certain disposition*.

*Id.* (emphasis added). The court went on to explain that while a defendant's manner of driving provided circumstantial evidence of his mental state, he could rebut the inference of "wanton and wilful disregard" by showing, for example, that he "had a seizure while driving." *Id.* Hence, *Sherman* makes clear that "the State is proscribing both the 'conduct' and the 'disposition.' " *Id.*

*State v. Whitcomb*, 753 P.2d 565 (Wash. Ct. App. 1988), on which the *Kelly* court relied, is no different. In *Whitcomb*, the Washington Court of Appeals quoted the above language from *Sherman* and concluded that the statute prohibits "*certain conduct*, from which a particular disposition or mental state—that of 'wanton or wilful disregard for the lives or property of others'—may be inferred." 753 P.2d at 568 (emphasis added). *Whitcomb* thus reaffirmed that both conduct and mental disposition are essential elements of the statute.

Although *Kelly* acknowledged that "the defendant's actual conduct must have been sufficient to permit an inference about his 'disposition or mental state,' " 422 F.3d at 893 (quoting *Whitcomb*, 753 P.2d at 568), it is evident that the court gave short shrift to the dual requirements of the statute.

For example, in distinguishing a Sixth Circuit case interpreting Michigan's eluding statute, *Kelly* stated that "[t]here is nothing in the Sixth Circuit's opinion to indicate that *a bad mental state is a sufficient basis for a conviction* under the Michigan statute." 422 F.3d at 894 (citing *United States v. Martin*, 378 F.3d 578 (6th Cir. 2004)) (emphasis added). By elevating mental state over objectively reckless conduct, *Kelly* ignored both the plain language of the statute and the Washington Supreme Court's construction of the statutory text.

C

*Kelly*, which was wrongly decided to begin with, cannot survive the Supreme Court's assault on its " 'mode of analysis.' " *Miller*, 335 F.3d at 900 (quoting Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1177 (1989)). Because we are bound by the Supreme Court's mode of analysis as set forth in *Duenas-Alvarez* and *James*, we must decide on a clean slate whether Washington's attempting to elude statute is categorically a crime of violence under the ACCA.

The issue boils down to whether, in the ordinary case, "driv[ing] [a] vehicle in a manner indicating a wanton and wilful disregard for the lives or property or others while attempting to elude a pursuing police vehicle" creates a "serious potential risk of physical injury to another." Although the "State need not prove that anyone else was endangered by the defendant's conduct, or that a high probability of harm actually existed," *Whitcomb*, 753 P.2d at 568, *James* makes clear that the ACCA "speaks in terms of '*potential* risk,' " 127 S. Ct. at 1597 (emphasis added).

A common-sense reading of the Washington statute compels the conclusion that conduct sufficient to create an inference of "wanton or wilful disregard" by its nature creates a serious *potential* risk of injury to others, including any passengers in the fleeing car, any drivers or passengers in other

vehicles on the road, any pedestrians or bystanders in the area, and at the very least, the pursuing police officer who is attempting to bring the defendant to a stop.[2] Indeed, every other circuit that has considered a similar statute has concluded that the proscribed conduct generally creates a serious potential risk of physical injury.

For example, in *United States v. Orsinord*, 483 F.3d 1169 (11th Cir. 2007), the Eleventh Circuit considered whether a virtually identical Florida statute[3] constituted a categorical crime of violence under U.S.S.G. § 4B1.2(a)(2). The court reasoned:

> [T]he language of the Guidelines makes clear that the 'potential risk' of injury, rather than actual violence or actual injury, is the touchstone of a 'crime of violence.' *The dangerous circumstances surrounding a person's attempt to flee from law*

---

[2]That the Washington statute criminalizes conduct showing disregard for either persons *or* property does not render it categorically overbroad, since conduct that evinces a wanton or wilful disregard for the property of others will ordinarily also create a serious potential risk of injury to passengers, bystanders, or the pursuing police officer. As the Supreme Court cautioned in *Duenas-Alvarez*, it is not enough to hypothesize some far-fetched scenario that might potentially endanger only property and not persons; there must be a "realistic probability, not a theoretical possibility, that the State would apply its statute to conduct" that only endangers property. 127 S. Ct. at 822; *United States v. Vidal*, 504 F.3d 1072, 1099 (9th Cir. 2007) (en banc) (Kozinski, J., dissenting) ("[Petitioner] cannot point to his own case, nor to any other case in the . . . history of the statute, where the state has applied [the statute] in such an idiosyncratic manner."); *see also United States v. Orsinord*, 483 F.3d 1169, 1182-83 (11th Cir. 2007) (holding that an attempting to elude statute with a similar "persons *or* property" provision is categorically a crime of violence).

[3]The Florida statute provided that one commits a second-degree felony if he "willfully flees or attempts to elude a law enforcement officer . . . and during the course of the fleeing or attempted eluding . . . [d]rives at high speed, or in *any manner which demonstrates a wanton disregard for the safety of persons or property*." Fla. Stat. § 316.1935(3) (quoted in *Orsinord*, 483 F.3d at 1182) (emphasis added).

*enforcement coupled with the person's operation of a motor vehicle most assuredly presents a 'potential risk of physical injury' to others.* And the stress and urgency of the situation will likely cause the person fleeing to drive recklessly, turning any pursuit into a high-speed chase with the potential for serious harm to pedestrians, other drivers, and the pursuing officers. Indeed, collisions between fleeing vehicles and pedestrians or other vehicles sharing the road are common. Moreover, by deliberately disobeying a law enforcement officer, the fleeing motorist provokes an inevitable, escalated confrontation with the officer when he is finally apprehended.

*Id.* at 1182-83 (internal citations omitted) (emphasis added).

Similarly, in *United States v. James*, 337 F.3d 387, 390-91 (4th Cir. 2003),[4] the Fourth Circuit had no difficulty concluding that "failing to stop for a blue light generally proscribes conduct that poses the potential for serious injury to another." The court noted that "[m]ost cases of failing to stop for a blue light involve the deliberate choice by the driver to disobey the police officer's signal. This disobedience poses the threat of a direct confrontation between the police officer and the occupants of the vehicle, which, in turn, creates a potential for serious physical injury to the officer, other occupants of the vehicle, and even bystanders." *Id.* at 391. *Accord United States v. Kendrick*, 423 F.3d 803, 809 (8th Cir. 2005) (holding that felony fleeing from a police officer is categorically a crime of violence because the defendant's "vehicle has the potential to become a deadly or dangerous weapon"); *United States v. Martin*, 378 F.3d 578, 583 (6th Cir. 2004) ("Because fleeing and eluding an officer while in a car generally will

---

[4]As noted above, the *Kelly* court mistakenly concluded that "the Fourth Circuit was not engaging in a *Taylor* categorical analysis," 422 F.3d at 894, even though the Supreme Court endorsed the Fourth Circuit's "most cases" approach in *James* and *Duenas-Alvarez*.

present serious *potential* risks of physical injury to third parties . . . it necessarily qualifies as a 'crime of violence' under the Guidelines."); *United States v. Howze*, 343 F.3d 919, 922 (7th Cir. 2003) ("[A]*ll* flights [from police] involve . . . risk-creating conduct.").

Washington cases applying RCW § 46.61.024 confirm that the proscribed conduct ordinarily involves a serious potential risk of harm to others. In the typical case, the eluding driver not only drives at high speeds but also runs through stop signs or red lights and/or weaves in and out of traffic.[5] *See, e.g.*, *State v. Refuerzo*, 7 P.3d 847, 851 (Wash. App. 2000) (upholding conviction of a driver who "weaved through traffic," "disregarded several stop signs and lights, cut across four lanes of traffic while turning, and went through a series of crosswalks in the presence of heavy pedestrian traffic").

Even the most seemingly benign cases involve a serious potential risk of physical injury. *See, e.g.*, *State v. Treat*, 35 P.3d 1192, 1196-97 (Wash. Ct. App. 2001) (upholding conviction of a driver who eluded police for only a quarter mile before stopping, where the driver "sped down the road," "stopped briefly, *accelerated at a deputy*, and then attempted to once again drive away" even after deputies shot out two of his tires) (emphasis added); *State v. Nearing*, 103 Wash. App. 1049 (2000) (unpublished opinion) (upholding conviction of a driver who eluded police for two miles by "accelerat[ing] over the 25 mile per hour speed limit" and "ma[king] a number of sharp, high speed turns, including one through a deserted parking lot," where the vehicle lacked seatbelts and the driver's "speed and erratic driving *made him a danger* to himself, his passenger, and anyone who might have been in his way") (emphasis added); *Whitcomb*, 753 P.2d at 568

---

[5]Washington courts hold that evidence of speeding alone is insufficient to prove that the defendant drove in a wanton or wilful manner. *See State v. Delmarter*, 845 P.2d 1340, 1353 (Wash. Ct. App. 1993), *overruled on other grounds in State v. Brunson*, 905 P.2d 346 (Wash. 1995).

(upholding conviction of a driver who went only 5 mph over the posted limit in an ATV, "which can be handled better than a normal car under [the] adverse conditions of snow and ice," where the driver ran a red light at a deserted intersection, used "inadequate lighting" despite fog and darkness, and created a " 'rooster-tailing' effect . . . *potentially creating a hazard* for vehicles following behind") (emphasis added).

Because Washington consistently applies RCW § 46.61.024 to conduct creating a "serious potential risk of physical injury to another," I would join our sister circuits in holding that attempting to elude a pursuing police officer is categorically a crime of violence. Therefore, I would affirm Jennings' sentence as an armed career criminal.

II

Even if *Kelly* were still the binding law of our court, I could not agree with the majority that *Navarro-Lopez* forecloses the application of the modified categorical approach to RCW § 46.61.024.

Relying on *Kelly*'s observation that "the conduct of the defendant need not pose any actual danger or create a serious risk of harm to anyone," 422 F.3d at 893, the majority cursorily concludes that the modified categorical approach cannot apply because "Jennings' crime of conviction . . . is missing an element of the generic crime," *i.e.*, "the actual or potential risk of harm to another." *Maj. op.* at 1682-83.[6]

However, the court in *Kelly* did not hold that the statute lacks a risk element altogether, just that the statute does not require a "*serious* risk of harm." 422 F.3d at 893. While the

---

[6]The majority's adherence to *Kelly* as our binding precedent for purposes of rejecting the application of the categorical approach is ironic given its casual rejection of the modified categorical approach, which *Kelly* faithfully applied.

court acknowledged that "the defendant's conduct must have been sufficient to permit an inference about his 'disposition or mental state,' " it did not in any way indicate that this quantum of conduct is insufficient to create a *potential* risk of injury. *Id.* (quoting *Whitcomb*, 753 P.2d at 568). Furthermore, in interpreting the "wanton or wilful disregard" language of the statute, the Washington Court of Appeals noted that " '[t]he usual meaning assigned to "willful," "wanton," or "reckless" . . . is that the actor has intentionally done an act of an unreasonable character in disregard of a *known or obvious risk* that was so great as to make it highly probable that harm would follow . . . .' " *Whitcomb*, 753 P.2d at 568 (quoting PROSSER & KEETON, TORTS § 34 at 213 (5th ed. 1984)) (emphasis added). As long as the statute contains a risk element, the modified categorical approach can be applied. *See Navarro-Lopez*, 503 F.3d at 1073 ("The modified categorical approach . . . only applies when the particular elements in the crime of conviction are broader than the generic crime."). Even if the state need not prove that this risk be so serious as to create a "high probability of harm," *id.*, the overbreadth of the risk element is precisely why application of the modified categorical approach is appropriate.

Although I do not express any opinion as to whether the judicially noticeable documents in this case are sufficient to establish all of the elements of the generic crime, I respectfully dissent from the majority's conclusion that RCW § 46.61.024 can *never* be considered a predicate violent felony under the ACCA.

## III

Because *Kelly* is no longer binding on this Court, I would affirm Jennings' sentence based on my conclusion that RCW § 46.61.024 is categorically a crime of violence under the ACCA. Even if *Kelly* were still good law, I could not agree with the majority's blanket rejection of its modified categorical approach to the Washington statute. I respectfully dissent.